## DUNCAN *vs.* SUN FIRE INSURANCE COMPANY.

Where the words " gunpowder is not insurable, unless by special agreement," were inserted in the *proposals* annexed to a *policy of insurance*, at the foot of a clause headed *extra hazardous*, in an enumeration of goods considered *not hazardous*, and of goods, trades and occupations considered *hazardous* and *extra hazardous*, IT WAS HELD, that gunpowder must be considered as included in articles enumerated as *extra hazardous ;* and that as the building insured in this case was declared to be privileged to contain *extra hazardous goods*, the policy was not forfeited by the fact that gunpowder was stored in the building at the time of its conflagration. And it was FURTHER HELD, that the words " gunpowder is not insurable," &c. were simply a declaration that gunpowder would not be insured under the class of *extra hazardous* goods, at the rate specified in that class, and would be excluded from an estimate of loss, unless specially insured.

Whether the powder was in the building with or without the knowledge or agency of the assured, had it been prohibited, *it seems*, would have been immaterial.

The *proposals* and *conditions* attached to a policy from part of the contract, and have the same force and effect as if contained in the body of the policy.

Stipulations in policies are considered express warranties, and it is not requisite that the circumstance or act warranted should be *material to the risk ;* an *express warranty* in this respect being distinguishable from a *representation.*

A warranty in a policy of insurance is a condition or contingency, and unless that be performed there is no contract; this rule prevails as well in the case of a warranty applying to matters *subsequent* as to matters *precedent*

ALBANY,
Jan. 1831.

Duncan
v.
Sun Fire Ins.
Company.

THIS was an action on two policies of insurance, tried at the New-York circuit in November, 1829, before the Hon. OGDEN EDWARDS, one of the circuit judges.

The defendants, by two policies, insured six frame stores in *Mobile*, in the state of Alabama, against loss or damage by fire, to the amount of $13,600. By the policies, the stores were privileged to contain goods *not hazardous, hazardous* and *extra hazardous*. In each policy are contained clauses in these words: "And it is agreed and declared to be the true intent and meaning of the parties hereto, that in case the above mentioned buildings shall, at any time after the making, and during the continuance of this insurance, be appropriated, applied, or used, to or for the purpose of carrying on or exercising therein any trade, business, or vocation, denominated *hazardous* or *extra hazardous*, or specified in the memorandum of special rates in the proposals annexed to this policy, or for the purpose of storing therein any of the articles, goods, or merchandise in the same proposals denominated *hazardous* or *extra haxardous*, or included in the memorandum of special rates, *unless herein otherwise specially provided for*, or hereafter agreed to by this company in writing, to be added to, or endorsed upon this policy; then, and from thenceforth, so long as the same shall be so appropriated, applied, or used, these presents shall cease, and be of no force or effect." And also: "And it is moreover declared, that this policy is made and accepted in reference to the *proposals* and *conditions* hereto annexed, which are to be used and resorted to, in order to explain the rights and obligations of the parties hereto, in all cases not herein otherwise specially provided for." The *proposals* referred to in the policy set forth eight classes of hazards, and the rates of annual premiums; the *eighth* class being thus described: "Buildings entirely of wood. Goods not hazardous therein, 75 a 100 cents per $100." Then follows an enumeration of goods considered *not hazardous* and of goods, trades, and occupations consid-

ered *hazardous* and *extra hazardous*, and also a special memorandum, in these words:

"*Not hazardous.* Goods not hazardous are such as are usually kept in dry-goods stores; including also household furniture and linen, cotton in bales, coffee, flour, indigo, potash, rice, sugars, and other articles not combustible.

"*Hazardous.* The following trades, goods, wares, and merchandise, are considered hazardous, and are charged with $12\frac{1}{2}$ cents per $100, in addition to the premium above named for each class, viz: Chair-makers, chocolate makers sail makers, tavern keepers, tobacco manufacturers, ship chandlers; china, glass, and earthenware, in packages; booksellers' stock, flax, hemp, groceries, including spirituous liquors, oil, pitch, saltpetre, tar, turpentine, confectioners, jewellers' stock, milliners, musical instrument seller's stock, pictures, prints, and watch-makers' stock.

"*Extra Hazardous.* The following trades and occupations, goods, wares, and merchandise, are deemed extra hazardous, and will be charged 25 cents and upwards per $100, in addition to the premium above specified, for each class, viz: Apothecaries or druggists, boat builders, coach makers, soap boilers, tallow chandlers, cabinet makers; carpenters in their own shops, or in buildings erecting or repairing; chymists, china, glass, and earthenware sellers, coopers, dyers, founders, musical instrument makers, and all manufactories requiring the use of fire heat, aqua-fortis, ether, spirits of turpentine, hay, straw, fodder, and grain unthreshed. *Gunpowder is not insurable, unless by special agreement.*

"*Special Mem.* Grist mills, fulling mills, paper mills, saw mills, and other mills, distilleries, bakeries, breweries, malt houses, varnish manufactories, printing offices, book binderies, and sugar refiners, will be insured at special rates of premium."

The premium paid in this case was $1,50 per $100. Within the time for which the buildings were insured, a *fire* happened. It commenced in one of the stores; and whilst it was consuming, a loud explosion took place, which the witnesses, judging from the shock and the effects produced, all concurred in stating their belief proceeded from *pow-*

*der* deposited in the store. The store in which the fire commenced was entirely consumed, and four of the other buildings were more or less injured. At the time of the fire, there were also three kegs of *powder* in one of the other stores, which were removed during the fire. The stores in which were powder, were occupied by tenants of the plaintiff. The damage of the plaintiff was estimated at $6,050, the loss upon the building consumed being estimated at $3000, the full sum at which it was insured. The testimony being closed, the counsel for the defendants prayed the judge to instruct the jury, that if the building in which the fire originated, was, at the time of the fire, *used for the purpose of storing gunpowder* therein, although it were without the knowledge or privity of the assured, the assured could not recover for the damage done to the building by the fire, in consequence of the restriction in the body of the policy, and in the proposals and classification of hazards therein referred to and annexed thereto. To this the plaintiff's counsel objected, and insisted that the judge should instruct the jury, that even if there was gunpowder stored in the building in which the fire originated, without the knowledge or agency of the assured, yet that the plaintiff was not barred from recovering the loss on such building. The judge charged the jury that the circumstance of there being gunpowder stored in the building previous to, and at the time of the conflagration, without the agency or knowledge of the assured, did not form a bar to the plaintiff's recovery, and that the whole of the evidence adduced by the defendants to establish that fact was irrelevant, and not to be considered by them in forming their verdict. The defendants excepted to the charge of the judge, and the jury found a verdict for the plaintiff for $7432,08, including interest upon the estimated loss. The defendants moved for a new trial.

*J. L. Wendell,* for defendants. The proposals and conditions attached to the policy are a part or parcel of the policy, as much so as if incorporated in the instrument itself. 1 *H. Black.* 254. 2 *id.* 574, 7, *n.* 6 *T. R.* 710. 6 *Cowen,* 576. The policy, it was declared by its terms, should be void, if the

buildings were used for storing therein any of the articles, goods, or merchandise, in the proposals denominated *hazardous* or *extra hazardous*, unless by the policy otherwise *specially* provided for. The policy did provide that the buildings should be privileged to contain both *hazardous* and *extra hazardous* goods, and in the *proposals* is a description of such goods; neither of which, as described in the proposals, include *gunpowder*, which, though inserted under the head *extra hazardous*, is expressly excepted from it, and placed upon the same footing with the articles included in the memorandum of *special rates*, that is, it is represented as something different from the articles specified as *extra hazardous*, and that for the insurance of it, a special agreement must be made. Under the permission, therefore to store *extra hazardous* articles, *gunpowder* is not included. Had it been declared that the stores were privileged to contain *hazardous* goods, and it had turned out in proof that they contained goods *extra hazardous*, as described in the proposals, can there be a question but that the policy would have been held void? The terms of the policy are not very explicit, and the reference to the article of gundpowder seems applicable only to the terms of insurance, yet it is contended that the intention of the parties is most obvious, that powder should not be kept in the stores. A policy of insurance has always been deemed obscure, incoherent, and strange in its terms, but as a commercial instrument, it receives from courts a liberal construction, and the intention of the parties is carried into effect. *Condy's Marshall,* 812. 1 *T. R.* 645. The charge of the judge must have misled the jury, who must have understood him to say, that althogh there was gunpowder in the building, if it was there without the knowledge or agency of the assured, he was entitled to recover. If the storing of the powder avoided the policy, it was a matter of indifference whether it was there with, or without the knowledge of the assured.

*D. Lord jun. & B. F. Butler,* for plaintiff. *Gunpowder* is not included in the *memorandum* of special rates; and is either not included in any of the classes of hazards specified in

the *proposals*, or is embraced in the class denominated *extra hazardous.* If not included in either of the classes of hazards, then the restrictive clause in the policy does not comprehend it; and if included in the class *extra hazardous*, the building was privileged to contain it. But it is contended that the clause relating to *gunpowder* should be construed only as notice to the world that *gunpowder* would not be considered as insured under either class of hazards; that unless a special agreement was made in reference to it, and a loss should occur, although *extra hazardous* goods were insured, the insurance would not attach to that article. The restrictive clause in the policy forbids the storing of *hazardous* and *extra hazardous* goods, and the carrying on in the buildings insured of the trades and occupations specified in the special memorandum, unless in the policy otherwise specially provided for. Strictly, *gunpowder* is not embraced in the restriction. The clause relative to it is susceptible of the construction we contend for; and if so, the court will not enlarge the restriction by construction, but rather, as in an exception in a deed which is construed most strictly against the grantor, and most beneficially for the grantee, give it a construction most favorable to the assured. 6 *Cowen,* 673. 4 *Taunt.* 387, 660. 15 *East,* 269. *Co. Litt.* 219, *b.* 3 *Wendell,* 636.

*By the Court,* SAVAGE, Ch. J. It is not denied that one of the buildings insured was destroyed, and four of the others injured, by the peril insured against. The defendants must therefore pay the amount of the plaintiff's loss, not exceeding the amount insured, unless they are excused in consequence of *gunpowder* being stored in some of the buildings. Whether the powder was there with the knowledge or agency of the plaintiff, seems to me not very material. The absence of agency or knowledge, on the part of the plaintiff, excuses him from any imputation of fraud, or an intention to violate his contract. The policies say nothing about the knowledge or agency of the plaintiff in storing articles therein prohibited, but the contract is in substance, that if the buildings shall be used for storing articles not privileged to be there, then, so long as they shall be so used, the policies shall

cease, and be of no force or effect. The plaintiff could not be supposed to know what articles were deposited in all these buildings, they being let to different persons. The building destroyed was divided into four tenements; two of which were used for storing goods, another as a commission store, and the other for counting rooms; but whether he knew that there was powder in the stores or not, if the buildings were used in a manner prohibited by the policy, the liability of the defendants ceased.

The proposals and conditions attached to the policy form part of the contract, and have the same force and effect as if contained in the body of the policy. 1 *H. Black.* 254. 2 *id.* 574, 7, *n.* 6 *T. R.* 710. 6 *Cowen,* 576. It is expressly stipulated that the buildings may contain articles denominated not hazardous, hazardous and extra hazardous; but if they contain those included in the memorandum of special rates, while they are so used, the policy shall cease and be of no effect. The stipulations in policies are considered express warranties; an express warranty is an agreement expressed in the policy, whereby the assured stipulates that certain facts relating to the risk are, or shall be true, or certain acts relating to the same subject have been, or shall be done. It is not requisite that the circumstance or act warranted should be material to the risk; in this respect an express warranty is distinguished from a representation. Lord Eldon says: "It is a first principle in the law of insurance, that if there is a warranty it is a part of the contract, that the matter is such as it is represented to be. The materiality or immateriality signifies nothing. The only question is as to the mere fact." *Phil. Ins.* 124, 5. A warranty in a policy of insurance is a condition or contingency, and unless that be performed, there is no contract, per Lord Mansfield, 1 *Taunt.* 345, 6, who was then speaking of a condition precedent; but the same reasons apply to put an end to the policy, where the condition or warranty applies to matters subsequent. In *The New Castle Fire Ins. Co.* v. *Marmoran,* 3 *Dow,* 255, in a policy upon a cotton mill, it was warranted that the mill was conformable to the first class of cotton and woollen rates. According to the proposals of the company, buildings

of the first rate of risks were those having stoves or coakles standing at a distance of not more than one foot from the wall; those having stove pipes or flues more than two feet in length, were considered to belong to the second class of risks. At the time of making the policy the building was not of the first class, but had been altered so as to conform to that class before the loss took place. Lord Eldon said, if the mill was warranted as being of the first class, it must be such as it was warranted to be, otherwise there is no contract. In this case I consider the policy and the proposals and conditions annexed as saying in substance, that the buildings are privileged to contain goods—not hazardous, hazardous and extra hazardous—warranted not to contain those included in the memorandum of special rates. If gunpowder, by the policy, is included in the class denominated extra hazardous, then it was privileged to be stored in the buildings insured; if not, and it is admitted that gunpowder was contained in the buildings at the time of the fire, then the policy was thereby rendered inoperative and of no effect. To determine whether gunpowder belongs to one or the other of the classifications mentioned, recourse must be had to the instrument itself. The clause in dispute reads thus: "Extra hazardous. The following trades and occupations, goods, wares and merchandise are deemed extra hazardous, and will be charged 25 cents and upwards, per $100, in addition to the premium above specified, for each class, viz: apothecaries, or druggists," &c. enumerating a great number; ending with grain unthreshed, and concluding with a period. Then follows in the same line a distinct sentence, as follows: "Gunpowder is not insurable, unless by special agreement." After which a distinct paragraph commences, as follows: "Special mem. Gristmills," &c. &c. "will be insured at special rates of premium." I understand these proposals as including gunpowder under articles *extra hazardous,* but distinctly stating that it will not be insured at the same rate as the other articles within the same class. I think the defendants so understood it, as is inferrible from that part of the policy out of which the controversy arises, and which I have quoted. The printed part of the policy excludes every thing denom-

ALBANY,
Jan. 1831.

Duncan
v.
Sun Fire Ins.
Company.

inated hazardous, extra hazardous, or included in the memorandum of special rates, unless specially provided for. This was evidently intended to exclude every thing but such as was considered not hazardous. Gunpowder is either included in extra hazardous, or forms a distinct class; if it forms a distinct class, then the printed form permits gunpowder when it excludes articles hazardous and extra hazardous, which are less combustible, and are insured at lower rates, which is an inconsistency not to be presumed or inferred. My inference from the manner in which the clause relating to gunpowder is printed, and from the fact that it is not treated as a distinct head or class in this stipulation in the policy, is, that it was considered *extra hazardous*, but not to be insured under that class at the rate of the other articles; and therefore to be excluded from any estimate of loss, unless specifically insured.

My conclusion is, that the plaintiff had a right, by the terms of the policy, to put gunpowder in his buildings insured; but in case of loss by fire, he is not entitled to compensation for such gunpowder; not having insured it by special agreement. If such is not the proper construction of the policy, then there is no positive exclusion of gunpowder, as it is clearly not included in the paragraph headed *special mem.*, and which is referred to in the clause of the policy in question, as "the memorandum of special rates." I place my opinion, however, upon the construction of the policy taken all together, that gunpowder belongs to the class denominated extra hazardous; and that of course, the buildings were privileged to contain it.

I am, therefore, of opinion that a new trial be denied.