## JOSEPH RAFEL *v.* THE NASHVILLE MARINE AND FIRE INSURANCE COMPANY.

Conditions attached to a policy of insurance form part of the contract.

One of the conditions of a policy was in these words: "Goods held in trust or on commission, are to be declared and insured as such, otherwise the policy will not cover such property. Goods on storage must be separately and specially insured." The assured held the goods in pawn, he therefore held them in trust; and, as he made no declaration and insurance, according to the condition of his policy, they were not covered by it.

A clause in a policy, covering "jewelry and clothing, being stock in trade," does not include such articles as musical instruments, surgical instruments, guns, pistols, books.

THIS case was tried by a jury, before *Larue*, Judge of the First District Court of New Orleans. *M. M. Cohen*, for plaintiff.

As to the law of this case. Description of the subject insured in policy. 1 Arnould, 210, citing Emerigon, c. x, v. 1, p. 292, ed. 1827. 1 Arn. 212—That under a general policy on goods, bullion, coin and jewels are insurable when put on board for the purposes of commerce; and in note (z) to ibid., goods, wares and merchandise will cover dollars, if entered at the customhouse. Arnould, 214—So, whalebone, oil, &c.; and the reason is that in whaling voyages it is the only cargo: citing 4 Pick. 429. Coin is protected by a policy on cargo or freight, 10 doubloons; citing Phillips on Ins. 66. Marshalll, b. 1, chap. 7, § 3. Roccus, n. 7. 1 Phillips, 185. 1 Arn. 216—An insurance on gold or silver will cover the loss of a gold cup or silver spoons; citing Emerigon, chap. x, § 1, vol. 1, p. 293, ed. 1827. 1 Arn. 217—Provisions are comprised under the word furniture; so are all the stores and tackle: so outfit is included in insurance on "ship." 1 Arn. 219—The nature and extent of the interest in his ship need not be disclosed on the face of the policy. S. P., 1 Arn. 216, 7, 8, citing 1 Phillips, 1689. "Profits and commissions covered by an insurance on property. *Holbrook* v. *Brown*. 2 Mass. 280. Cited 1 Phillips, 192. *Pritchett* v. *Insurance Company of North America*, 3 Yeates, 461.

Of insurable interest: It is not necessary to have an absolute vested ownership or property; but it is sufficient to have a right in the thing insured or a right derivable out of some contract about the thing insured giving benefit from preservation, and prejudice from destruction. 1 Arn. 229, 30. Any creditor having a claim on property pledged to him for advances, has an insurable interest to the extent of his claim. 1 Arn. 251. The trust is as to the surplus, as in case of mortgagee insuring. 1 Arn. 252. Pledgee has an insurable interest. 1 Arn. 253.

Assured need not disclose what the underwriter ought to know, *ex.* facts comprised in the general usages of trade, (1 Arn. 559, 60,) such as that under terms "jewelry and clothing," are included spoons, pistols, velvet, &c. Every well settled or generally known usage of trade is, *primá facie*, considered to form part of the policy. 1 Arn. 66. Terms used in a secondary sense may be explained by parol. 1 Arn. 76. Evidence of usage admitted to show that the term *corn* is meant to comprehend every sort of grain, and also beans, peas and malt. Ib. So, on a policy on *furs*, held, that plaintiff could show in evidence that the term "fur," covered the "skins" in the invoice.

The usage of trade may be proved by merchants dealing particularly in that article. Underwriters are bound to know the mercantile meaning of words, and are liable according to that meaning. 7 Cowen, 202. *Astor* v. *Union Insurance Company.* 8 Humphrey's, 684. Mortgage is immaterial.

The measure of damage is the amount of damage, and the interest on that sum. *Ellmaker* v. *F. F. Insurance Company*, 5 Barr. 183.

Construction: 3 Harr. 480, *Rafferty* v. *N. B. F. Insurance Company.* 18 Pick. 419, *Fletcher* v. *Commonwealth Ins. Company.* 1 Story, 360, *Palmer* v. *Warren Ins. Company.* 2 Met. 1, *Whelon* v. *Old Colony Ins. Company.* 2 Anthon, 114, *Duplanty* v. *Com. Ins. Company.* 23 Wendell, 525, *McLaughlin* v. *N. C, Ins. Co.* 1 Arnould, 65, note.

Policies are to be construed largely for the benefit of trade and of the assured. Hillyard, 201, marginal paging. 1 Duer, 161, § 5, 6, 8.

As to trust: 1 Arn. 251. L. C. 310, *Pawn.* A statement less in amount than what he is legally entitled to, does not estop from claiming a large amount, if a settlement is not made pursuant to such statement. *Am. Ins. Co.* v. *Griswold*, 14 Wend. 399, Stock in trade, includes tools, fixtures and implements of a mechanic, as a baker. 2 Hall, 490. Silver spoons included in household furniture. Ib. As to carpenter and interest. Ib. 589. A general description sufficient. 5 R. R. 424. Defendant presumed to insure with knowledge of all the circumstances. 1 Hall, 42.

The case was tried by a jury, and their verdict resolves the meaning of the terms jewelry and clothing, &c., in accordance with L. C. art. 1941.

My sole object in praying for a jury, was to have the verdict of twelve citizens upon the common and usual signification of the words of the contract according to general and popular use. Had the case been decided by the judge alone, this court might well say, we are as competent as he to decide on the common and usual signification of the words of the contract, according to general and popular use ; and, if your honors differed from him, you would reverse his judgment. But, when a jury have passed upon it, this court will say the jury is right in their interpretation, or, if we differ from them, it is a matter peculiarly within their province. We will not say that we know the common and usual signification of the words better than twelve of our fellow citizens. We will not annul their verdict on this point. · L. C. 1952. S. P., 3 Ann. 224. Ib. 2 Ann. 250. 1 Phil. on Ins. 44, 45, 46, 47, 48, 50.

*Hunton* and *Bradford*, for defendant. Article of conditions annexed to the policy declares, that " if there is any fraud or false swearing," on the part of the insured, he shall forfeit all claim under his policy. Is it not fraudulent to demand payment for a loss for $5000, when his loss was not a fourth of that sum ? Is it not fraudulent to demand payment for a harp at $75, when it is proved by plaintiff's own witness, (the witness who first presented the account of the loss,) that the harp was only of the value of $50 ? Is it not fraudulent to claim for the loss of " gold pencils, Algerian watches," &c., when it is shown by the testimony of his own witnesses, that these articles were not on the inventory of his stock taken just before the fire, and from which it is said the account of the loss was made out?

In the case of *Levi* v. *Baillie et al.*, 7 Bing. 349, the plaintiff claimed £1085. The jury gave a verdict for £500. The court granted a new trial, on the ground that the loss was fraudulently overrated. In the case of *Wood* v. *Masterman, &c.*, cited in Ellis, p. 14, Lord Tenterden instructed the jury, that if the plaintiff has overrated his loss, with a fraudulent intent, they should find not the amount of the loss, but for the defendant. So, too, in *Reguier* v. *La. State Marine Ins. Co.*, 12 L. R. 344, it was held, that as plaintiff had overrated his loss knowingly, he should recover nothing.

By the court :

SLIDELL, J. This action is upon a policy by which the defendants insured *Joseph Rafel*, " against loss and damage by fire, to the amount of five thousand dollars, on jewelry and clothing, being stock in trade, contained in the store occupied by him on St. Charles street." There was a verdict in favor of the plaintiff for $4197 50. The defendants applied for a new trial, which the district judge refused. In doing so, he remarked, that he could not understand upon what principles of law or evidence the jury found the verdict in the case ; but preferred to send the matter before this court for final settlement, rather than to grant a new trial before a jury, which would consume time, and might be attended with equally unsatisfactory results.

The first question which presents itself for our consideration is, whether this policy covers a large number of articles which the plaintiff, who was a pawnbroker, held in pawn.

The conditions attached to a policy form part of the contract. This has been long settled. See *Duncan* v. *Sun Insurance Company*, 6 Wendell, 488. Ellis on Fire Insurance, p. 12. Moreover, the present policy itself declares, that it is

made and accepted in reference to the conditions thereto annexed; which are to be used and resorted to, in order to explain the rights and obligations of the parties thereto, in all cases not therein otherwise specially provided for.

The 8th condition of the policy is in these words: "Goods held in trust or on commission are to be declared and insured as such; otherwise, this policy will not cover such property. Goods on storage must be separately and specially insured."

The goods in question were not the property of the plaintiff. He had, at best, a privilege upon them. They were his security for monies advanced to the pawners. His holding was in the nature of a trust for the owners, to whom he was to restore the goods upon their paying him the amount loaned. He must be regarded as coming within the class of holders contemplated in the condition of the policy. In the common law States and in England, from which this form of policy was derived, a pawnee is considered as clothed with the character of a trustee. See Kent, vol. 2, p. 583.

The condition, upon which alone property held by the plaintiff in trust could be covered by the policy, has not been fulfilled, and the policy never attached to the articles so held. It is not, perhaps, necessary to seek for the motive of this condition; but a reasonable motive for it may be easily imagined. As was said in the case of *De Forest* v. *The Fulton Ins. Co.*, 1 Hall, 84, the declaration and insurance by the trustee or factor of the goods he holds, as goods held in trust or on commission, must have been required, on the ground that the legal title of the trustee and the special property of the factor, though conferring upon each an insurable interest to the value of the goods, yet did not authorize a calculation upon that active zeal and watchful vigilance in the safe-guard of the goods, which an absolute ownership would insure. See, also, *Columbian Insurance Company* v. *Lawrence*, 2 Peters, 49.

The case of *Brichba* v. *N. Y. Lafayette Insurance Company*, 2 Hall, 375, is not distinguishable in principle from the present. There the plaintiff effected a policy of insurance against fire, with the defendants, "on goods and furniture contained in his counting room." Among other items of loss, the plaintiff claimed a sum of $280, for damage by the fire to certain piano fortes, watches, &c., which had been deposited with him for sale, and on which he had made advances. The court observed: The third condition annexed to the policy declares, that goods held in trust or on commission shall not be covered, unless they are insured as such. The articles in question were not the property of the plaintiff; they were held by him "in trust or on commission." He had a lien upon them for advances, which could have been defeated by a repayment of the money advanced. His interest was not absolute, but conditional; and it could not be covered by a mere insurance upon his own property. If the goods in question were to be covered by the policy, they should have been specified in it as goods held in trust or on commission; and it would be violating the plain terms of the third condition annexed to the policy, if this claim were to be allowed.

Another question raised by the appellants is, what kinds of goods are covered by the terms of the policy, which is "on jewelry and clothing, being stock in trade, contained in the store occupied by him on St. Charles street?"

If the words had been simply "stock in trade," it would have been sufficient to cover all kinds of goods belonging to the plaintiff, contained in the store and pertaining to its business, except, perhaps, such as, under the conditions of the

policy, might require a special designation. But those words, as they are here used, are limited by the antecedent words, and cannot be considered as comprehending any other effects besides jewelry and clothing.

There was no attempt to show by evidence, that any peculiar meaning is attached to such a description by the usage of trade; and we are therefore left to construe the words according to their plain, ordinary and popular sense.

Testing the rights of the parties by this standard, we are quite unable to say that the terms "jewelry and clothing," include such articles as musical instruments, surgical instruments, guns, pistols, books, and many others that appear in the statement of loss.

Excluding the articles held in pawn, and those which cannot be classed either as jewelry or clothing, the loss sustained by the plaintiff is below the claim made by him under oath. The excessiveness of the claim over the real loss within the policy, was a fraud, it is said, which, under one of the conditions annexed to the policy, deprived the plaintiff of all recourse. This condition requires the assured who has sustained a loss, to deliver in a particular account of such loss or damage, under oath; and provides, that if there appear any fraud or false swearing, the insured shall forfeit all claim under the policy. To subject the plaintiff to this penalty, it should appear that the exaggeration of his claim was wilful and fraudulent. The plaintiff may well have thought he was covered for the goods held in pawn; and his mistake with regard to his legal rights, is not to be visited upon him as a fraud or perjury.

It is therefore decreed, that the judgment of the district court be reversed, and that this cause be remanded for a new trial; the costs of this appeal to be paid by the plaintiff.