*207 Tbe opinion of the Court was delivered by
Wardlaw, J.
There was no direct evidence concerning the origin of the fire. The mass of testimony, much of it contradicted, which the defendant introduced to show circumstances from which the plaintiff’s fraudulent agency in the burning might be inferred, has been weighed by the jury, and on the facts of the case the verdict is considered conclusive.
The defendant now holds up the written contract, and insists that the plaintiff’s rights have been defeated; first, because gunpowder was kept in the store-house, and was sometimes sold from wooden kegs; and second, because oil was in the store-house at the time of the burning, and near to it was some cotton yarn.
By the first of the conditions of insurance it was required, (after mention of what applications for the insurance of buildings should specify,) that the application for insurance should specify, “in case of goods and merchandize, whether or not they are of the description denominated hazardous, extra hazardous, or included in the memorandum of special rates: and a false description by the assured of a building or its contents shall render absolutely void a policy issuing upon such description.” In other parts of the appendix to the policy, lists are given of goods denominated not hazardous, hazardous, and extra hazardous, and of those subject to special rates; the not hazardous being such as are usually kept in dry goods stores, including coffee, &c. But neither of the lists contains gunpowder. The fifth of the conditions contains this: “the keeping of gunpowder for sale or on storage, upon or in the premises insured, or the lighting of the same by camphine or spirit gas, without written permission in the policy, shall render it void.”
The first thought naturally is to look at the plaintiff’s application. But it has not been produced. The insurance seems to have been effected at Fayetteville, N. C., by an agent *208 of the plaintiff applying to an agent of tbe defendant keeping an office there; tbe former deposes that, as be believes, be made a written application; tbe latter deposes that be can find no application of tbe plaintiff on tbe file, and believes none was made in writing, but feels sure that nothing special was contained in tbe application that was made. Tbe policy however declares that tbe company in consideration of thirty dollars to them paid, “ do insure William L. Leggett against loss or damage by fire to tbe amount of two thousand dollars on bis stock of goods and merchandize, contained in bis store in Marlborough District, S. 0., as particularly described in bis written application on file of this date, which is hereby made, a part of this policy.” It is then contradictory of tbe defendant’s earnest appeal to tbe letter of tbe contract, to say that there vras no written application, or that its contents have been shown to be either “ goods such as are usually kept in dry goods stores,” or goods such as were in tbe store-house without any special description.
If we assume that tbe application described tbe goods as they really were, powder was mentioned; or if we assume tbe description to have been that of an ordinary stock in a country store, then tbe evidence, sustained by tbe verdict, under tbe instructions that were given to tbe jury, shows that gunpowder was included. But adopting tbe latter assump-. tion, tbe defendant says that tbe keeping of gunpowder was-forbidden by tbe policy. How? Tbe condition, concerning what tbe application in case of goods and merchandize shall contain, did not require tbe mention of gunpowder, for it is not enumerated as either hazardous, extra hazardous, or subject to special rate. (Duncan vs. Sun. Fire Ins. Co., 6 Wend. 495.) It was not kept “upon or in tbe premises insured,” for tbe premises (by which, as the context shows, was meant some-building,) were not insured at all. This strictness is conformable to what has been urged on the part of the insurers, and> is justified by tbe general rule which requires all conditions; *209 to be construed strongly against those for whose benefit they were reserved. If, however, the store-house had been insured along with an ordinary assortment of goods and merchandize, such as are usually kept in a country store, we would enter into inquiries which this case does not demand, before we would hold that the retailing within the store-house of gunpowder, kept in no large quantity, necessarily made void an insurance under the fifth condition above recited. (See - vs. Mechanics' Fire Ins. Co., 2 Hall, N. Y., 490; Langdon vs. N. Y. Eq. Fire Ins. Co., 2 Hall, 226; 6 Wend. 623.)
Concerning the oil, the defendant refers to a stipulation in the policy, “that in case the above-mentioned building shall, during the continuance of this insurance, be appropriated, applied, or used, to and for the purpose of storing or vending therein, any of the articles, goods, or merchandize, in the conditions aforesaid, denominated hazardous, extra hazardous,- or included in the memorandum of special rates, unless herein otherwise specially provided for, or hereafter agreed to by this company in writing and added to or endorsed upon this policy, then and from thenceforth, so long as the same shall be so appropriated, applied or used, these presents shall cease and be of no effect: and this policy is made and accepted, with reference to the conditions hereto annexed, which are to .be used and resorted to, in order to explain the rights and obligations of parties, in all cases not herein otherwise specially provided for.” Reference is also had to the latter part of the first condition. “If, after insurance is effected, the risk shall be increased by any means within the control of the assured, such insurance shall be void and of no effect.”
The complaint made in the second ground of appeal, seems to be, that the Judge did not, in his summing up, specially advert to the danger which was occasioned by the oil situated as it was. That omission might have been easily corrected by a suggestion from the counsel of the defendant. The oil and cotton, were, however, substantially embraced in the *210 instructions that were given to tbe jury, whether their being-in the store may be considered, in reference, either to the stipulation in the policy, or to the above recited clause in the first condition.
It was not suggested on the Circuit that the fire did actualfy proceed from the oil and cotton, for there was no evidence of their contact or very dangerous proximity, and such suggestion would have weakened the main defence, that the plaintiff had himself caused the fire by means far more speedy and certain. But the breach of condition made by the oil was intimated on the Circuit, and has been pressed here.
The express stipulation in the policy itself, is by its terms confined to the case of a building insured, 'and in reference to that, forbids the appropriation, or chief use of the building, for any of the forbidden purposes, not the incidental keeping of small quantities of the forbidden articles for retail along with a general stock of goods. (See the case of Langdon above cited; 3 Kent’s C.om. 373 ; 5 Hill, N. Y. 10.)
If a barrel of oil temporarily kept in the house which contained the goods insured, suspended the policy, under the stipulation, then according to the same reasoning the keeping of any of the following articles, (and, perhaps, any of many others,) would have the same effect: any china, or earthen, or glass ware, or looking-glasses, or window-glass, or millinery, or flax, or wool,, or saltpetre, or sulphur, or tallow, or straw hats, or matches, or pictures, or confectionery, or jewelry, or perfumery, or stationery, or spirituous liquors, or spirits of turpentine, or varnish. Without any of these articles a country store would hardly be deemed to have a sufficient assortment.
The increase of risk contemplated in the first condition, is the increase by something permanent or habitual. (6 Adolp. & Ell. 75; 33 Eng. C. L. R. 12, Shaw vs. Roberts; 31 Maine, 223; 20 Conn. 139.)
In Dotson vs. Sotheby, et al., 1 Moody & Malk. 90, 22 E. C. *211 L. 260, a barn that was insured required tarring, and for tbe purpose of tarring it, a fire was lighted inside, and a tar-barrel brought in. In the absence of the assured, and by the negligence of his servant, the tar boiled over and took fire, in consequence of which the building was burned down. Lord Tenterden held the insurers liable, understanding the condition against fire and hazardous goods, as forbidding only the habitual use of fire or ordinary deposit of hazardous goods, not their occasional introduction for a temporary purpose connected with the occupation of the premises. It is obvious that in the instructions which were given to the jury in the case we are considering, there was an error, of which the plaintiff in another event of the case, might have had reason to complain. Gross negligence is equivalent to evil design; but ordinary negligence is the very thing against which insurance is mainly intended to guard, and even if the loss should have proceeded from it, the right of the insured is not thereby affected. In this policy the certificate of loss is required to exclude the suspicion of fraud, but not of negligence. If greasy cotton had been put into a corner of the store, by the plaintiff himself, in ignorance of the danger thus occasioned, or in inattention to it, but without evil design, and combustion had thence ensued, the case would not have been less strong for the plaintiff than it now is.
The motion is dismissed.
O’Neall, WithbRS, Whither, Glover and Muhro, JJ., concurred.

Motion dismissed.