21696

Sims GOOD and Dorothy D. Good, Respondents, v. The CONTINENTAL INSURANCE COMPANY, Appellant.

(291 S. E. (2d) 198)

L. *Paul Barnes, of Ward, Howell, Barnes, Long, Hudgens & Adams, Spartanburg,* and *Thomas C. Salane, of Turner, Padget, Graham & Laney,* Columbia, *for appellant.*

*William E. Whitney, Jr., of Long & Whitney,* Union, *for respondents.*

April 26, 1982.

HARWELL, Justice:

Respondents initiated this action to recover proceeds from a fire insurance policy issued by appellant. At appropriate stages during trial, appellant moved for a directed verdict, a judgment notwithstanding the verdict or in the alternative for a new trial. Appellant alleges the trial court's denial of the motions was error. We agree and reverse, setting aside the jury's verdict of $49,600.00.

Appellant insured respondents' house against loss by fire with a standard homeowners policy. The policy contained the following standard increase hazard clause:

Unless otherwise provided in writing added hereto this company shall not be liable for loss occurring (a) while

the hazard is increased by any means within the control or knowledge of the insured.

A fire occurring on November 29, 1977 almost totally destroyed respondents' residence. Appellant disclaimed liability upon the ground that after the policy was written and without any written authorization, the hazard was increased by means within the control or knowledge of the respondents.

While extinguishing the fire, firemen discovered an illegal liquor still on the second floor concealed in a false closet under the eaves of the roof. The still, encased by brick and mortar, consisted of a ninety-gallon copper vat over an eight to ten inch butane gas burner. Firemen also found nine fifty-five (55) gallon drums full of mash, three fifty-five (55) gallon drums approximately three-quarters full of mash, twenty-two (22) half-gallons of moonshine liquor, and hundreds of broken bottles and melted plastic containers.

Immediately after the fire was extinguished and while the embers were still smoking, a police department detective found the copper vat three-fourths full of "steaming" mash while the mash in the twelve fifty-five (55) gallon drums was merely "warm". The bricks encasing the copper vat which were exposed to the butane burner were considerably hotter on the inside surfaces than the outside surfaces which were exposed only to the heat of the fire. When the detective dismantled the burner, he found no indication of gas in the gas line. Based upon his observations, he opined that the still was in operation when the fire occurred. However, respondent Sims Good denied that the still had been in operation. He admitted, though, that he had installed the still two years earlier some time after his insurance policy became effective and that he had pled guilty to the criminal offense of unlawfully possessing a distillery in violation of S. C. Code Ann. § 61-13-300. He admitted that he made liquor in his home for presents but not to sell. Appellant had no knowledge of the illegal still's existence. In fact, respondent Sims Good testified that no one else knew of the still's existence, not even his wife, respondent Dorothy Good.

Appellant contends that the only reasonable inference to be drawn from the evidence presented is that the use of the dwelling for the manufacture of illegal liquor and the storage of mash and flammable liquors in large quantities substantially increased the hazard assumed under the policy; that the increased hazard resulted from means solely and exclusively within respondent Sims Good's knowledge or control; that the increased hazard was accomplished after issuance of the policy and its effective date; that the conditions causing the increased hazard were permanent and habitual; that the hazard was materially and substantially increased; and that language and conditions of the policy rendered it immaterial whether the use of the premises for the manufacture of illegal whiskey caused or contributed to the cause of the fire. We agree.

Initially, we recognize that our standard of review is to construe the evidence liberally in favor of the respondents and give them the benefit of all reasonable inferences that can be drawn therefrom. *Gray v. Barnes,* 244 S. C. 454, 137 S. E. (2d) 594 (1964); *Warren v. Watkins Motor Lines,* 242 S. C. 331, 130 S. E. (2d) 896 (1963). In *Leggett v. Aetna Ins. Co.,* 10 Rich, 44 S.C.L. 202 (1856) and *Sumter Warehouse Co. v. Phoenix Ins. Co.,* 76 S. C. 76, 56 S. E. 654 (1907) this Court held that coverage under an insurance policy was suspended if the increased risk was permanent and continuous even though it did not produce the loss. However, if the increased risk caused the loss, an occasional, temporary increase of risk was sufficient to void a policy.

In addition to these guidelines, both appellant and respondents acknowledge that to void the policy the increase of hazard must be material and substantial such that the insurer could not reasonably be presumed to have contracted to assume it. 8 Couch on Insurance § 37:695. Also, according to the policy, increased hazard must be accomplished by means solely within the control and knowledge of the respondents after the insurance contract was effected.

The evidence leads unmistakably to the following: the distillery was permanently installed; it was regularly used at least during the holiday season; respondent

Sims Good installed the still after the insurance policy became effective; and, only he operated the still.

We conclude that the only reasonable inference from the evidence is that there had been an increase of hazard, thereby voiding the policy. The use to which respondents put their dwelling was so foreign to the normal uses of a dwelling as to become beyond the contemplation of the insurer. Like other contracts, the insurance policy must be enforced according to its terms. However, in construing such contracts, courts should endeavor to ascertain from the language used, in the light of the surrounding circumstances and the nature of the business, the safeguards which the parties intended to place around themselves. Surely the insurer did not contemplate providing insurance coverage on a residence which concealed an illegal still and the fruits of its operation.

Reversed.

Lewis, C. J., and Littlejohn, Ness and Gregory, JJ., concur.