ALFRED RICHARDS & al. *versus* THE PROTECTION INS. CO.

The description of property insured in the body of the policy, when the rate of premium is thereby affected, operates as a warranty that the property is of the class described, and is in the nature of a condition precedent, and performance of it must be shown by the insured, before he can recover upon the policy.

Where the conditions annexed to a policy of insurance of goods against fire, and referred to in the body of it, divided insurable articles into several classes, some as being more hazardous, and therefore requiring a higher rate of premium than others, the parties are considered as agreeing to the rightfulness of the classification, and cannot be permitted to prove it inaccurate.

Thus, where the conditions exhibited one sort of goods as not hazardous and another as hazardous, the insured cannot offer proof that no greater risk attached to the insurance of the latter than the former; nor that a particular article, asserted in the conditions to belong to one of the classes, did in reality belong to another class.

A representation by the insured, that the goods insured belong to the former description, is a warranty of that fact. It is in the nature of a condition precedent, and must be proved, before the insured can recover on the policy for a loss.

Such a representation extends not merely to the time of taking the policy, but it warrants that the goods shall continue to be of that description, during the whole continuance of the policy; and that not merely a part of the goods, but all of them are, and shall be of that description.

The violation of such a warranty by the insured, will defeat the policy.

Thus, where a policy was taken upon "a stock in trade, consisting of not hazardous merchandise," and the insured kept, among other goods, for sale, the articles of oil and glass, which in the "conditions," were denominated "hazardous," the policy was thereby vacated.

Assumpsit, upon a policy of insurance of goods for one year.

A classification of hazards was annexed to the policy, and referred to in the body of it.

This classification exhibited certain sorts of goods to be not hazardous, others to be hazardous, and others extra-hazardous.

Among the *hazardous* articles were enumerated oil, glass and tallow.

The policy was upon "a stock in trade, consisting of *not hazardous* merchandize."

The insured traded upon the goods at retail, selling and getting new supplies as opportunities and occasions were presented. Among other articles which they kept for sale, were oil, glass and tallow candles.

Nearly at the end of the year, the goods and the store containing them were destroyed by fire.

In the body of the policy was the following provision:— "this policy is made and accepted in reference to the conditions hereto annexed, which are to be used and resorted to in order to explain the rights and obligations of the parties hereto in all cases not herein otherwise specially provided for."

Two of the "conditions" thus referred to, are specified in the opinions hereinafter stated.

One of the defences set up, was that oil, glass and tallow were kept in the store and traded upon by the plaintiffs as a part of their stock in trade. For the purpose of settling some other questions of fact in the case, the jury were instructed that the keeping and trading upon those articles by the plaintiffs, did not defeat the policy.

A verdict was returned for the plaintiffs which is to be set aside, if that instruction was erroneous.

*Cutting & Rawson,* for the plaintiffs.

*Hobbs,* for the defendant.

The opinion of the Court, (WELLS, J. dissenting,) was delivered by

SHEPLEY, C. J. — The suit is upon a policy of insurance of goods against loss or damage by fire. The goods were to constitute the stock in trade of the plaintiffs, and were to be kept in a frame store occupied by themselves. The store and goods were subsequently consumed by fire.

It appeared, from testimony introduced by the plaintiffs, that there were in the store three cans of oil, which might hold about a barrel each, and from which they were accustomed to draw for sale. That there was a barrel of oil in the back part of the store. That there were boxes of glass. These articles composed a part of the stock of goods consumed. There had been tallow candles kept as part of the stock for trade; whether they had been all sold before the goods were consumed, it was uncertain.

To prevent any misapprehension respecting the ground, upon which the decision is placed, it may be proper to notice two clauses of the policy.

The first in effect declares, that if the premises shall be used for the exercise of any trade or business denominated hazardous, extra-hazardous, or specified in the memorandum of special rates, or for the purpose of storing any goods thus denominated or specified, the contract during that time shall be of no effect. This clause suspending the contract under such circumstances is applicable only to the building; and it can have no effect upon the rights of the parties, for there is no proof that the building was used for any such business or for the purpose of storing any such articles.

The second is, " if after insurance is effected upon any building or goods in this office, either by the original policy or by the renewal thereof, the risk shall be increased by any

means whatsoever within the control of the assured ; or if such buildings or premises shall with the assent of the assured, be occupied in any way so as to render the risk more hazardous than at the time of insuring, such insurance shall be void and of no effect." Whether there had been a violation of this provision was a question of fact for the jury to determine. They have found no violation of it, and the plaintiff's right to recover cannot be affected by it.

Their right to recover must depend upon the effect of the language used by them in describing the property insured. They procured insurance "on their stock in trade, consisting of not hazardous merchandize."

Four classes of hazards are named in the conditions annexed to the policy, denominated not hazardous, hazardous, extra-hazardous, and memorandum of special risks. The goods insured were by the plaintiffs declared to be of the first class. The goods before named were not of that class, but were of the second class denominated hazardous.

Insurance is proposed to be made upon goods contained in these different classes at different rates of premium. The classes of hazard, and the conditions of insurance annexed to the policy, form a part of the contract between the parties. That contract requires mutual good faith and fair dealing. The law presumes, that the parties acted with intelligence. The defendants did not propose to insure goods of the class denominated hazardous, at the premium affixed for the class denominated not hazardous. Nor did they propose to insure goods composed partly of one class and partly of the other, at the rate of premium affixed to the least hazardous. This appears from the language used ; for " groceries with any hazardous articles" are enumerated in the class of hazardous. If the plaintiffs having procured insurance on their stock in trade, consisting of not hazardous articles, could have kept a stock of goods for sale composed entirely of hazardous articles, and could have recovered for a loss of them by fire, they could do so only by compelling the defendants to become insurers and to bear the loss for a compensation less than the

one affixed to such a class of goods, and less than the one agreed upon by the parties as appropriate to such a risk. So if they could have kept goods for sale composed partly of the first, and partly of the second class of risks and could after a loss of them by fire have recovered for them, the defendants would have been compelled to bear the loss for a premium less, than that for which they would have knowingly assumed the risk. The injustice in the latter case would not be so great as in the former, but a recovery would be equally unauthorized according to the terms of the contract.

The description of the property insured in the body of the policy, when the rate of premium is thereby affected, operates as a warranty, that the property is of the character and class described. And that the property is all, and not partly of that character and class. Such a warranty is in the nature of a condition precedent, and performance of it must be shown by the person insured, before he can recover upon the policy.

In the case of *Fowler* v. *The Ætna Fire Ins. Co.* 6 Cow. 673, it was decided, that the description of the property in the policy, was a warranty, and that it, as "a condition precedent, must be fulfilled by the insured, before performance can be enforced against the insurer."

In *Duncan* v. *The Sun Fire Ins. Co.* 6 Wend. 488, the opinion says, "the stipulations in policies are considered as express warranties; an express warranty is an agreement expressed in the policy, whereby the assured stipulates, that certain facts relating to the risk, are or shall be true, or certain acts relating to the same subject have been, or shall be done."

In the case of *Wood* v. *The Hartford Fire Ins. Co.* 13 Conn. 533, the opinion says, "any statement or description, or any undertaking on the part of the insured, on the face of the policy, which relates to the risk, is a warranty."

The insurance in that case, was made on "the one undivided half of the paper-mill, which they own at Westville." The opinion states, "if this relates to the risk, it is a warranty. That it does is evident from the memorandum in the conditions

of the policy, where paper-mills are enumerated among those articles, which will be insured at special rates of premium; that is, a paper-mill is the subject of peculiar risks, and is to be insured upon special stipulations."

This is no novel doctrine. *Bean* v. *Stupart*, Doug. 14; *Pawson* v. *Watson*, Cowp. 787.

And it is admitted to be the law, in the later cases decided in this country. *Delonguemare* v. *Trad. Ins. Co.* 2 Hall, 589; *Burritt* v. *Saratoga County Mutual Fire Ins. Co.* 5 Hill, 188; *Clark* v. *Manuf. Ins. Co.* 2 M. & W. 472.

In the present case, the warranty that their stock in trade consisted of not hazardous merchandize, has not been complied with, but violated by keeping goods for sale, of a different class denominated hazardous, for the insurance of which, a greater premium was required.

One description of goods of the class not hazardous, "are such as are usually kept in dry goods stores." The classification determines to a certain extent, what goods may be thus designated, for it determines, that certain goods must belong to other classes, by their being enumerated as appertaining to them. Such goods as the parties by their enumeration of them, as composing one class, have agreed should be of that class, cannot compose any portion of another class.

The parties have agreed, that oil, tallow and glass belong to the class denominated hazardous. The plaintiff cannot therefore, be permitted to prove, that those articles are *usually kept* in dry goods stores, and thereby have them transferred to a different class denominated not hazardous.

All the cases decided upon the effect of a stipulation contained in the body of the policy, and operating as a warranty, determine that there must be a compliance with the warranty to entitle the assured to recover. Not because any of the conditions of the policy declare, that it shall be void, if articles of a different class or description are kept for sale, but because one who has violated his own contract of warranty, cannot enforce it against the other party to it.

The position that the insurance in this case attached only

to goods of the denomination not hazardous, and that its validity was not affected by the presence of goods of a different class, cannot be admitted. If it were, the assured might, contrary to his own stipulation to have goods only of one class, keep goods of different classes, thereby greatly enhancing the risk, and yet recover for the loss of the goods composed of the class insured. Nor can the warranty be considered as attaching to part of the goods only. It relates to their stock in trade, and not to a portion of it. Nor can the warranty upon any known principles of law or justice be considered as attaching only to the goods in the store, at the time it was made, and as not operative to prevent the introduction and sale, of a class of goods of a much more hazardous character. Such a warranty would be of little or no value. The premium is predicated upon the same description of risk during its continuance.

The case of *Curry* v. *Com. Ins. Co.*, 10 Pick. 535, is not at variance with the positions before stated. The case was not decided upon the effect of any stipulation, or warranty respecting the property in the body of the policy, but upon the effect of a condition, providing, that the policy should be null and void, if an alteration of the building, affecting the risk, should be made with the assent of the assured. Whether such an alteration had been made, was of course a question to be determined by a jury.

The case of *Merriam* v. *Middlesex Mutual Fire Ins. Co.* 21 Pick. 162, was of a similar character.

In this case, the plaintiffs by their own testimony have proved that their warranty, that their stock in trade consisted of not hazardous merchandise, had not been complied with. There is therefore no occasion to send the case to a jury to have that fact determined.

That warranty attached to the goods insured, at all times during the continuance of the risk.

In the case of *Stetson* v. *The Mass. Mutual Fire Ins. Co.* 4 Mass. 337, the opinion states, " and where the estimate of the risk depends upon the continuance of the material circum-

stances represented to the insurer, these are not to be altered to his detriment, by any act of the insured, without a like effect upon the contract." That is, without avoiding it.

According to the agreement of the parties, the verdict is set aside and a nonsuit entered.

Dissenting opinion by

WELLS, J. — The plaintiffs effected an insurance on their stock in trade, consisting of not hazardous merchandise, kept in a frame store occupied by them.

In the body of the policy is the following provision : —

" And it is agreed and declared, to be the true intent and meaning of the parties hereto, that in case the above-mentioned premises shall at any time after the making, and during the continuance of this insurance, be appropriated, applied, or used to or for the purpose of carrying on, or exercising therein any trade, business, or vocation, denominated *hazardous* or *extra-hazardous*, or specified in the memorandum of special rates, in the terms and conditions annexed to this policy, or for the purpose of keeping or storing therein any of the articles, goods, or merchandise, in the same terms and conditions denominated *hazardous* or *extra-hazardous*, or included in the memorandum of special rates, unless herein otherwise specially provided for, or hereafter agreed by this company in writing, and added to or endorsed upon this policy, then, from thenceforth, so long as the same shall be so *appropriated*, applied, used or occupied, these presents shall cease, and be of no force or effect."

The word, premises, mentioned in it, must be understood to mean the store containing the goods insured. This conclusion is evident from the language employed. " Exercising *therein* any trade, business or vocation," &c., and " keeping or storing *therein* any of the articles, goods or merchandise," &c.

But the merely retailing, in the store, in the ordinary course of business, some goods of a character hazardous, extra-hazardous or falling within the memorandum of special hazards, would not bring the insured, within the scope of this clause.

The use prohibited is general in its terms. It is *trade, business,* or *vocation, keeping* or *storing,* and so long as the prohibited appropriation or occupation continues, the force and effect of the policy by the terms of it would cease. Such is the construction, which has been put, upon a similar clause, in a fire policy where the insurance was on the building, in New York, and a different one would probably be a departure from the intention of the parties. 1 Phil. on Ins. 417.

The second condition annexed, to the policy, provides, that " if after insurance is effected upon any building or goods in this office, either by the original policy, or by the renewal thereof, the risk shall be increased by any means whatsoever within the control of the assured, or if such buildings or premises shall, with the assent of the assured, be occupied in any way so as to render the risk more hazardous than at the time of insuring, such insurance shall be void and of no effect."

That the provision, before mentioned in the body of the policy, is intended to prohibit a general use alone of the building insured, or when it contains goods, which are insured, is manifested by the more particular and specific terms of the second condition, annexed to the policy. These different provisions do not mean the same thing; they are not identical. And if the storing of a ton of sulphur, in a building, which contained goods insured, as not hazardous, would merely suspend the operation of the policy, until it was removed, some further provision would be required to protect the insurers against the keeping and vending small quantities of the same article. This protection is afforded by the second condition, which does not prohibit the keeping and vending goods deemed more hazardous than those insured, unless the risk is increased. The consequence of such an act, increasing the risk, renders the policy absolutely void. The increase of the risk terminates the insurance, the moment it takes place. And the removal of the cause, which increased the risk, cannot revive the contract.

The goods, insured, in the present case, were those not hazardous, but there were kept for sale, in the store, oil, glass, sulphur, candles and matches, which are mentioned in the other classes of hazards, and it is therefore contended, that the policy is void, and that the Court should so determine, as a matter of law.

But it is nowhere said in any of the conditions, that the policy shall be void, for keeping or vending such articles, when not hazardous goods are insured. If by so doing *the risk is increased,* then the insurance is void. It is the increase of the risk, that determines the result. The quantity and value of what was kept and sold might be so small that no one would say the risk was perceptibly enhanced. Would the keeping and selling an ounce of sulphur, or a quart of oil have that effect? It is not within the province of the Court to decide, that the mere fact of keeping in the store goods more hazardous, by the classification merely in the conditions, is in reality so. Such inquiry, the plaintiffs have a right to submit to the jury. Hardware is classed among hazardous articles, and if the plaintiffs kept an axe in their store, it would not be the duty of the Court to say, that such an act would create a forfeiture of the policy.

Conditions precedent are those, which must be proved before the action can be sustained. The preliminary measures prescribed, in the conditions, must be taken by the insured. But it is never necessary for him to prove, that he has not kept with the goods insured, others of a class more hazardous. Such proof may be offered in defence, and rebutted, if it can be, by counter proof, that the risk has not been enhanced.

The description of the subject matter insured is undoubtedly a warranty that it is such as it is described to be, and if untrue in substance, the policy is void. Thus, where insurance was effected on stock in trade, in a two story frame house, *filled in with brick,* and it was not filled in with brick, the policy was held to be void. *Fowler* v. *The Ætna Fire Ins. Co.,* 6 Cowen, 673.

The thing insured must substantially correspond with the

description.   The insured cannot recover for the loss of a wooden house, upon the insurance of a brick one, nor for one, whose size, use or location differs essentially from the description.   This doctrine is sustained by many authorities. Phil. on Ins. 410, *et sequentia.*

Each case must depend upon its own terms and conditions, for policies are not always alike.

But will it follow, that where goods are insured as not hazardous, consisting of many and various articles, by a policy like that under consideration, and one or more of the articles with them is hazardous, the policy is void ?

It is true, that nothing more is insured, than the not hazardous goods, and they are such as they are represented to be, but some are mingled with them, which are hazardous.

The present risk is on the stock in trade of the plaintiffs, " consisting of not hazardous merchandise," &c., and to such goods only will the insurance attach.   They neither warrant nor represent, that hazardous merchandise is not in their store.

There is merchandise to which the description can apply, and some to which it cannot, but in the case of a building, no such separation can be made ; it must be viewed as a whole, and must conform to the description.

If policies are to be held void, when merchandise insured is placed with what is more hazardous, than that insured, there are but few, that would be valid under the exercise of a rule so rigid.   For in such case, if one, having not hazardous goods insured, should happen to have in his store a pint of oil, a box of glass or an earthen jug, which fall within a higher class of hazards, his policy would be void, although those articles might not serve, in the least degree, to enhance the risk.   There is nothing in the policy or the conditions, requiring such severe construction.   It is a case manifestly provided for in the second condition before mentioned, and the policy is not avoided unless the risk is increased.

But in the present case, it does not appear, that at the time of effecting the insurance, the articles more hazardous than

those insured, were then in the store. The case does not disclose at what time they were put there, except that it was before the fire. There is nothing in the policy, that can be construed into a warranty, that the plaintiffs would not carry into their store, during the continuance of the risk, an article denominated hazardous or extra-hazardous. For aught that appears, they were at liberty to do so, and the exercise of it would not operate injuriously upon the insurers, if the risk was not enhanced. It is like the case of the alteration of a building insured, which does not avoid the policy, if the risk is not increased. The Jefferson Ins. Co. v. Cotheal, 7 Wend. 72; Grant v. Howard Ins. Co., 5 Hill, 10.

If the insured had no license under the policy, to keep and vend those goods, to which objection is made, the principle that the insurance is not void, unless the risk was increased, and that such question is to be settled by the jury, is sustained by the cases of Curry v. Com. Ins. Co., 10 Pick. 535; Merriam v. Middlesex M. F. Ins. Co., 21 Pick. 162.

The defendants contended, that there were goods kept in the store of a hazardous or extra-hazardous character, or included in the schedule of special risks, and that the right of the plaintiffs to recover on the policy was thereby forfeited.

But the jury were instructed to consider the policy, or the rights of the plaintiffs under it, as not destroyed by these facts.

The Court having withdrawn from the jury what should have been submitted to them for their determination, the verdict, in my opinion, should be set aside, and a new trial granted.