## PERCIVAL & al. *versus* MAINE M. M. INS. Co.

An insurance, against fire, upon a mill for the manufacture of starch, was effected, upon a representation by the insured, that the business had been completed for the season. In fact, a quantity of starch was then lodged in the drying room. For the purpose of expelling moisture from it, after the policy had been effected, a fire was made in the mill by the insured. *Held*, it was not for the Court but for the jury to decide whether such drying of the article was or was not a part of the manufacturing process; and, therefore, whether the representation was or was not true, that the business of manufacturing was completed when the insurance was effected.

Where an insurance upon a building is effected upon a warranty that a

" suitable watch" would be kept, it is not for the Court but for the jury to decide what, under the circumstances, would be a suitable watch.

ON EXCEPTIONS from *Nisi Prius*, HOWARD, J., presiding. The plaintiffs owned a mill for the manufacture of starch. They quit working it, December 8, 1847. On the 10th of the same month, they applied to the defendants for insurance against fire. In the application were the following statements ; — " We have got through manufacturing of starch for this season." " We keep a watch the whole time we are manufacturing starch." The defendants issued a policy December 14, 1847, containing among other things the following words ; " conditional that a suitable watch be kept while manufacturing starch." The mill was destroyed by fire, December 31, 1847. This action is assumpsit, brought upon the policy, to recover for the loss.

It was proved that, on the 8th December, a small quantity of starch was left on the racks for want of a cask to put it in. There was no direct proof that the drying of that starch had then been completed. On the 31st Dec. in the forenoon, in order to expel from it the moisture which was remaining in it, when first left upon the racks, or which had been subsequently imbibed, a clerk of the plaintiffs, a lad of about 18 years of age, by their direction, built a fire in the furnace. He then left the mill for some time ; afterwards returned and replenished the fire and went away, about half an hour before the fire, which consumed the mill, was discovered. The clerk, though frequently at the mill, was not proved to have had any experience in manufacturing. A witness, experienced in the business, testified that, in order to the keeping of a suitable watch, the mill is to be in charge of the workmen during the daytime, and some one is to sleep in it by night, and that " a person unacquainted with starch is not so suitable for a watch, as one acquainted with the operation of manufacturing."

There was other evidence upon the same point.

For the purposes of this trial, the Judge instructed the jury : —

1st, *that* the drying out of the moisture, imbibed or remain-

ing, as testified to, should be considered as a manufacturing of starch ; —

2d, *that*, if starch was put into the mill to dry, requiring the same fires as starch in the original process of drying in the manufacture, it might be considered as part of the process of manufacturing ; —

3d, *that* the term suitable watch, as used in the policy, means the presence of a suitable person at the mill, at all times during the manufacture of starch, in readiness to extinguish the fire by suitable means."

The verdict was for the defendants, and the plaintiffs excepted.

*J. S. Abbott*, for the plaintiffs.

1. It was for the jury, not for the Court, to determine whether drying out the moisture, imbibed by the starch was a part of the process of manufacturing.

2. But if it were for the Court to determine, there was error in the ruling, that drying out moisture imbibed by the starch, was a part of the process of manufacturing starch. Paper, leather and boards are articles manufactured. But the drying out of the moisture from them is no part of the manufacturing process.

3. There was error in the Judge's definition of the term " suitable watch." The jury, from the evidence in the case, should have been permitted to determine what would have been a suitable watch, and whether such a watch was in fact kept. They should, in determining it, have regard to the price paid for the insurance, to the condition and situation of the mill, and the opinion of experienced men. *Chase* v. *Eagle Insurance Company*, 5 Pick. 51; *Smith* v. *Dennie*, 6 Pick. 262.

*Hutchinson*, for the defendants.

The first instruction was correct.

The manufacture of starch is not completed, until the same is dried sufficiently to be put into casks for exportation. Drying is the most dangerous part of the manufacturing process. There was the same risk in drying on the 31st of December, as

would have been on the 8th. Cases cited, 1 Esp. N. P. 66 and 67. The suppositions of counsel as to the drying of other manufactures are inappropriate.

The second instruction was correct.

The condition that there should be a suitable watch, was a part of the written contract, and to be construed by the Court according to the situation of the parties, and the subject matter. *Sumner, admr.* v. *Williams,* 8 Mass. 214; *Fowle,* v. *Bigelow,* 10 Mass. 379; *Hopkins* v. *Young,* 11 Mass. 302.

Oral testimony is not admissible, to contradict, vary or materially affect, by way of explanation, any written contract, whether under seal or not, if the contract be perfect in itself, and be capable of a clear and intelligible exposition from the terms of which it is composed. *Stackpole* v. *Arnold,* 11 Mass. 27; *Baker* v. *Prentiss,* 6 Mass. 430; *Richards* v. *Kilham,* 10 Mass. 239; *Hunt, adm'r,* v. *Adams,* 7 Mass. 518; *Higginson* v. *Dall,* 13 Mass. The case of *Murray* v. *Hatch,* 6 Mass. 465, upon a policy of insurance, sustains the principle contended for.

Was the instruction that *"the term, suitable watch, as used in the policy, means the presence of a suitable person at the mill at all times during the manufacture of starch, in readiness to extinguish fire by suitable means,"* such as should have been given? The subject of the contract, and the obvious design and purpose of introducing these words, is an essential element in the construction.

Insurance in this case, was upon a mill constructed purposely for the manufacture of starch, the last operation of which, was drying the starch filled with water, in the previous processes of the manufacture, requiring a high temperature, and long continued, increasing danger of conflagration. If a *suitable watch* were kept, that danger would be very much diminished. And what would this suitable watch be expected to do? If the building caught fire during the time of danger, was he to look on and see the building consumed? If that was the duty, we admit that, in this case it was fully performed, and that too, with no inconvenience and at a safe distance.

But the instruction to the jury conveyed the exact import of the words, "suitable watch." The watch was to be maintained in the time of danger. A watch without "suitable means" of extinguishing fire, would have been of no use.

But if it were for the jury to decide, their conclusion was correct, and in accordance with the opinion of the witness, given by him as an expert. In fact, however, no watch of any kind was kept.

Tenney, J. — In the written application for insurance, dated December 10, 1847, it is stated by the plaintiffs, "we have got through the manufacture of starch for this season, and we keep a watch the whole time we are manufacturing starch." In the policy, which is dated Dec. 14, 1847, the risk being assumed therein from noon of that day for one year is the following, "conditioned that a suitable watch be kept while manufacturing starch."

On Dec. 8, 1847, a small quantity of starch was left on the racks, which had imbibed moisture, or in which moisture remained, there being no positive proof, that the original drying had been completed, and was there till the destruction of the mill. On Dec. 31, 1847, a clerk of one of the plaintiffs, not being proved to have any experience in the manufacture of starch, was sent to build a fire in the furnace of the mill for the purpose of drying the starch so left; he built the fire as directed and left the mill for some time; then returned and replenished the fire, and left the mill about half an hour before the fire, which consumed the mill, was discovered.

The questions presented to the jury at the trial were, whether the statement, "we have got through the manufacture of starch for this season," was a material misrepresentation, and whether the fire took in the manufacture of starch at a time when there was not a suitable watch.

The jury were instructed, that if the starch was put into the mill to dry, requiring the same fires, as starch in the original process of drying in the manufacture, it might be

considered as a part of the " process of manufacturing." This merely permitted the jury, upon satisfactory evidence, to treat the expulsion of moisture from starch put into the mill for that purpose, as a part of the original manufacture, if the same fires were necessary; and that the terms of the policy did not forbid such a conclusion. This proposition cannot be regarded as erroneous. The policy must have a reasonable construction, and such as will affect the intention of the parties. It was in contemplation by them, that while the manufacturing operation was in progress generally, the property insured was peculiarly exposed to destruction by fire; hence, that there should be a watch, which should be suitable at such times. It can hardly be supposed, that the term " manufacture of starch" was designed to have so restricted a signification in the policy, that the use of such fires as were made to drive out the inherent moisture in the materials used, or the water with which they were mixed in the early stages of the manufacture, during which a suitable watch was deemed indispensable, was to be allowed without any watch, merely because the purpose was to dry up the moisture, which might have been imbibed after the original drying was complete.

If the exposure to danger from fire was the same in both cases, and the latter operation was not in the " manufacture of starch," according to the true meaning of the policy, and therefore that a watch was not demanded on this account, is it certain that the policy is not equally invalid, by such a voluntary subjection of the building to a risk arising from fires, used by the plaintiffs in the mill, for a purpose not intended by the parties as disclosed by their contract? The insurance is upon a starch mill, and the gear thereof; and measures were taken by the defendants, that they should be specially guarded at the plaintiff 's expense, while the danger was imminent, in the prosecution of the business for which it was designed. To use it without a watch for purposes foreign to the " manufacture of starch," when such use would subject it to the same risk, as when a watch was required, would be a manifest attempt to misappropriate the building to hazardous operations, and to

omit the precautions contracted for, and make the wrongful appropriation, which was the cause of its destruction, an excuse for the neglect of the party, who was guilty of it.

But the jury must have understood the instruction, " that the drying out of the moisture imbibed or remaining, should be considered as manufacturing starch," as a rule of law, which with them was inflexible. It was given to them as a legal proposition, which they could not disregard.

In the manufacture of different articles, very different and various results are sought, depending upon the nature and the intended use of the same. In the conversion of logs into boards, it is probably never expected that the boards should be seasoned or planed, to make the manufacture complete. But it would not be contended that a valuable article of cabinet furniture would be manufactured in the proper sense of the term, unless it was composed of seasoned materials, and the part at least, which is ordinarily exposed to view, in its use, made smooth. Writing paper would not be considered as perfectly manufactured, unless it was dry when delivered, without any distinction being made between the moisture of the pulp, and that contracted after it was once dried; and in such paper as is supposed, it would be regarded as a necessary part of the manufacture, that it should be sized in a manner appropriate for the use of the article, whereas paper destined for newspapers, would probably not require the same degree of sizing.

One but little skilled in the arts, perhaps, would know that starch coming from the racks in a starch mill, having moisture in it, which was imbibed or which remained of that originally existing, was not in a perfect manufactured condition, so that it could be properly packed away as an article of commerce to be used at any indefinite future time. But this cannot be assumed as a doctrine of the law, but must depend entirely upon the facts applicable to the question. It is for the jury to determine from the evidence at what stage of the process the manufacture of starch is ended and perfect. It is the same in principle, as the question, whether the requisite degree

of surgical skill has been employed in the performance of an operation, coming within the range of the professional labors of one who has undertaken it. It is to be settled as a fact, whether the party has taken every necessary step in the process, and whether in each, a sufficient degree of dexterity has been used and directed by competent scientific knowledge.

In the instruction which we are now examining, the jury were not left to full consideration of all the facts before them, but were bound to find *that* to be a part of the manufacture of starch, which they should have been allowed to pass upon exclusively and find from the evidence whether it were so or not.

The same may be said also touching the definition given to the jury of the term "suitable watch."

What would be a suitable watch must depend much upon the character of the different processes used in the manufacture of starch, and the danger attending each. The operation of washing the materials, and reducing them to a pulp ; and also the separation of the starch from the grosser parts, may not require the aid of fire to the same extent demanded in the process of drying the starch. And a watchman would not be regarded so remiss in his duty, at a time when water rather than fire was used, as when a very high degree of temperature was raised, if he was not at his post. The watch may be entirely "suitable" at some times, while the manufacture is going on, in parts of its stages, if the person employed is absent from the mill. It is not difficult to perceive, in order to constitute a suitable watch, for the purpose intended, during certain processes, that there should not only be some person in a situation to discover a fire in its earliest stages, but that he, or others, who could be notified immediately, should have the means at hand to extinguish the fire.

Of these matters the jury were the judges, under all the facts in evidence. They were restricted in their inquiries upon this branch of the case, and the instruction, that the term "suitable watch" means the presence of a suitable person at the mill at all times, during the manufacture of starch, in

readiness to extinguish the fire by suitable means." was a limitation of the exercise of the duty of the jury, which *is not fully* sustained by legal principles. *Morton* v. *Fairbanks*, 11 Pick. 368. *Exceptions sustained —*

Note. — Shepley, C. J., did not attend at the argument, and took no part in the decision.