Reed, P. J.,
delivered the opinion of the court.
• We cannot agree with the contention of counsel that the statute of the state of Iowa limiting the time in which an *218 action could be commenced to ninety days was operative and controlling in this state. Even in that state, with the statute in existence, the statute could be waived by contract, and when waived, and an absolute contract made to pay in sixty days, a cause of action would accrue upon default of the payment, and the law would be powerless to extend the time and make a new contract differing from the one made by the parties. Where no contract was made as to the time of payment, perhaps the legislature could make one ; but a law changing and making a new contract for the parties would be of very doubtful validity, even if it operated on all obligations to pay; but it, by its terms, is confined to one line of contracts, and might be classed as specific or “class” legislation, that is always regarded as of very doubtful constitutionality. But, however this may be, we are satisfied that the statute is purely remedial in its character, does not affect the contract, but only the remedy to enforce it, and if valid can only be made available within the state, —a sort of a statute of limitations, which is purely local in character, that has no extraterritorial application or force, and the trial court so properly held.
II. The pleadings clearly set out the only important issue of fact in the case, and the only one tried.
The following facts were fully established Ity the evidence : That R. S. Gray was the local agent of the company to solicit insurance, examine the property to be insured, receive the application and premium, make out the policy and forward it with the application to the general office, and, if approved, the policy was executed and became operative; second, that he, as such agent, made a survey of the property, filled up the blank application in writing, presented it to B. H. Du Bois for his signature; that Du Bois at the time called his attention to the error in the application in the statement of the title, and told him that the property was owned equally and jointly by himself and brother, that the title was by devise, and that he represented his brother and was taking the insurance for the benefit of both.
*219 Du Bois testified.: “ That Gray prepared the application, that the conversation referred to was right there, before the application was signed, at that time. I told him the circumstances exactly. The3r didn’t correspond exactly with the application, and he told me to sign it, and he would accept the application all right if I was doing business for my brother, which I said I was, for my brother and myself.”
R. S. Gra3T, the agent who effected the insurance, testified: “ That he was the agent of the defendant company July 31, 1889, in soliciting and writing applications for insurance; that witness wrote and filled out the application on the barn, ha3'- and water tanks for plaintiffs; that witness himself wrote in the answers; that Du Bois told witness that the property was willed to him, Du Bois, and his brother, and belonged to him and his brother equally; that he, Du Bois, .was transacting business both for himself and brother ; that Du Bois did not state to witness that he was the sole and undisputed owner of the property. Du Bois told witness he, Du Bois, was insuring the property for the benefit of himself and brother.”
“ Or. Int. 14. Was your attention ever called to this application from the time it was made until after the fire ? A. Not that I remember of; don’t think it was.
“ Or. Int. 15. When did you first learn that there was any question about the truth of the answers in the application ? A. Never heard of any question about the truth of the answers in the application.
“ Cr. Int. 16. Did you, at the time this application was made, willfully and knowingly insert false answers in the application ? If so, why did you so knowingly make such false answers ? A. I never willfully or knowingly inserted any false answers in the application.”
This evidence Avas undisputed, and only met by the evidence of Theodore Grefe, who was assistant secretary of the company and superintendent of its agencies. He said:
“Int. 4. State in general the manner in which said business was conducted in respect to the taking of risks and issuing *220 of policies. A. Soliciting agent, such as that of R. S. Gray, who solicited the insurance of the plaintiff upon which the policy in controversy was issued, procured application from parties and submitted them to the company for approval, and if such application were accepted and approved, the company at its home office issued the policy, and mailed it direct to the assured, unless otherwise requested, it being frequently the case that they went to parties holding mortgages on the propert3r insured, and such an agent has no power to bind the company, he being employed to solicit applications and for that purpose only.
“That the policy of insurance was issued by defendant upon this application to B. H. Du Bois, and mailed August 8, 1889, to B. H. Du Bois, at Denver, Colorado. That the application was received from R. S. Gray, solicitor. That the policy was issued wholly and solely upon the basis of the statements made in the application, the application being the basis upon which all business was accepted from solicitors.
“That R. S. Gray was, on July 31, 1889, a solicitor of applications for insurance in the defendant company, and had authority from the auditor of the state of Iowa to so solicit. He had no power to issue policies of said company, or to otherwise bind the defendant company. In regard to the application in question, R. S. Gray had no right to do anything but to take Du Bois’ statement and answers to all questions in the application, just as he gave them, and submit the application to the company for its approval. He had no right or authority to issue policies or bind the company in any manner.”
This evidence in no way contradicted or rebutted the evidence of the plaintiff. What the general course of business of the compan3'- was and how conducted was of very little legal importance, without proof of knowledge of it having been brought home to the other contracting party; and as to the power of Gray to bind the company, it is a well settled rule of the law of agency that where a recognized agency exists, unless limitations of such agency are brought *221 to the knowledge of the other contracting party, such limitations are inoperative and the principal is bound not only by the actual authoritjr conferred, but by his acts, in the liue of his agency, to the extent of his apparent authority. This is a well established principle, founded upon reason and justice, to prevent imposition and protect innocent parties; and it is a fact to be deplored that in the business of insurance this principle is so often attempted to be disregarded, and that the principal, while taking all the benefits of the contract, when liability is incurred, attempts to throw oil the responsibility by setting up the limited authority of the agent, known only to the principal. But in this case it is not necessary to rely upon the apparent authority of the agent. The actual authority conferred upon the agent, when taken in connection with the established and undisputed facts, was sufficient to make the application forwarded to the company by the agent the act of the company, and not of the insured, and estop it to deny its correctness and regularity.
The following is section 1 of an act relating to insurance in the state of Iowa, approved March 31, 1880, and in force at the time this contract of insurance was made:
“ Any person who shall hereafter solicit insurance, or procure applications therefor, shall be held to be the soliciting agent of insurance company or association issuing a policy on such application, or on a renewal thereof, anything in the application or policy to the contrary notwithstanding.”
Gfrefe, the officer of the company, testified: “That the application was received from R. S. Gray, solicitor. * * * That R. S. Gray was, on July 31, 1889, a solicitor of applications for insurance in the defendant company, and had authority from the auditor of the state of Iowa to solicit. He had no power to issue policies of said company, or otherwise bind the defendant company.”
The statute, as well as the evidence, made Gray the agent of the company to solicit insurance, receive applications and forward them to the company. This was all he did in this instance. There is no claim that he exceeded or attempted *222 to exceed his authority. If, with full knowledge of all the facts, and with his attention directly called to the error, he accepted it, forwarded it to his principal without explanation or calling its attention to the facts, it became responsible for the errors contained in the application.
The numerous technical and complicated provisions inserted in modern policies, the result of years of experiments and experience, are supposed to be safeguards to protect insurance companies against the frauds that might be perpetrated by designing applicants against the company, and where the application is willfully and knowingly false, the forfeiture and defense are based upon the fraud and deceit by which the contract was obtained. In the absence of those, there is no basis for the defense.
In this case there was no fraudulent intention shown on the part of either the insured or the agent. It is not claimed that the failure to insert the name of the brother or the source of title in any way increased the risk, or that the result would have been in any way different if the agent had made the application conform to the facts as given to him by the applicant. It seems to have arisen from want of qualification of the agent and a resulting mistake, as B. H. DuBois was the applicant, he seems to have thought the application correct and so informed the applicant. If such was not the fact, we have only the alternative that it was an intentional, premeditated fraud, not of the applicant against the company, but by the latter, through its accredited agent, against the assured. Our conclusion is, that under the facts as shown, neither DuBois brothers nor B. H. DuBois, are responsible for the contents of the application, having fully disclosed all the facts to the agent; and that the misstatements in the application cannot avail the appellant as a defense to the action, see State Ins. Co. v. Taylor, 14 Colo. 499; Wich v. Equitable Ins. Co., 2 Colo. App. 484 ; California Ins. Co. v. Gracey, 15 Colo. 70; Brown v. Com. Ins. Co., 86 Ala. 189; Dupreau v. Ins. Co.., 76 Mich. 615 ; Mowry v. Rosendale, 74 N. Y. 361; Iron Works v. Ins. Co., 25 Conn. 465; Ins. Co. *223 v. Ivers, 56 Ill. 402 ; Ins. Co. v. Chipp, 93 Ill. 96 ; Ellenberger v. Ins. Co., 89 Pa. St. 464; Wood on Ins., sec. 384; May on Ins., sec. 140.
Counsel assigned several errors upon the admission and rejection of evidence upon the trial, but they are general in character. In order to be reviewed they should be definite and specific, pointing out the supposed error. General assignments, — -that the court erred in admitting evidence of plaintiff and in rejecting the evidence of defendant, — might well be omitted.
A careful examination of the instructions asked by the defendant and refused fails to disclose any error. All were properly refused. Each in effect was equivalent to the instruction that plaintiff could not recover, and practically withdrawing from the jury the questions of fact necessary to a determination of the issues.
The charge of the court as given was short and specific, and in accord with the decisions of the courts of this state and of many others. One paragraph, taken by itself, in regard to ratification and estoppel, might be open to criticism, but, as explained and modified by the balance, would not warrant a reversal.
Aside from the amount of loss sustained, all the law of the case was contained in the following brief, concise paragraphs: “ That the plaintiff is entitled to recover that amount, unless you believe from the evidence that there was such fraud or deceit practiced at the time of obtaining this insurance as would be a defense; ” and, “ The court will instruct you that the application is a part of the policy. The answers therein made shall be taken as true, unless you find, from the evidence, that at the time the application was made and signed by the plaintiff, B. H. Du Bois, that the agent then and there knew the status of affairs, as to the ownership, and the agent himself, knowing these facts, would estop the company from setting up an affirmative defense of that kind.”
They presented fairly to the jury the only questions presented by the issues.
The general rule is well stated in 1 Wood on Insurance, *224 sec. 286: “It is for the jury to say whether the facts concealed or misstated were material to the risk. And the burden is upon the insurer to establish the materiality of the representation and its falsity.”
“ If fraud on the part of the assured is set up in avoidance of the policy, the insurer must establish it by competent affirmative proof, as it will be presumed that the assured acted honestly and in good faith, until the contrary is satisfactorily established. In order, however, to avoid a policy upon the ground of misrepresentation on the part of the assured, it is not necessary that a fraudulent purpose or intent, on the part of the assured, should be established. It is enough if the representation was in fact false, and was material to the risk.”
“It is the peculiar province of the jury to determine all questions of fact in a case. Thus, it is for the court to say what amounts to a misdescription of premises, but it is for the jury to say whether or not a misdescription -was material to the risk, so as to misrepresentation or concealment, so it is for the jury to say whether there has been a breach of warranty, and, in a case where the warranty is dependent upon a matter of fact whether a warranty in fact exists. It is for the jury to say whether there has been a material alteration or increase of the risk.” See, also, Wich v. Equitable Ins. Co., supra; Boos v. Life Ins. Co., 64 N. Y. 236 ; Boardman v. Ins. Co., 20 N. H. 551; M’Lanahan v. Ins. Co., 1 Pet. 170; Parker v. Ins. Co., 10 Gray (Mass.), 302; Percival v. Ins. Co., 33 Me. 242; Ins. Co. v. Mitchell, 48 Pa. St. 374; Jones Mfg. Co. v. Ins. Co., 8 Cush. (Mass.) 82; Ins. Co. v. Lawrence, 10 Pet. 507 ; Mut. Ins. Co. v. Deale, 18 Md. 26 ; Seminary v. Ins. Co., 14 Gray (Mass.), 459; Curry v. Ins. Co., 10 Pick. (Mass.) 535; Richards v. Ins. Co., 30 Me. 273.
The questions of fact having been fairly submitted and found for the plaintiff, such finding is conclusive upon this court, and our view of the law of the case, being as stated above, the judgment will be affirmed.

Affirmed.