[No. 1359.]

LAMPKIN v. THE TRAVELERS' INSURANCE CO.

1. ACCIDENT INSURANCE—PROOF OF INJURY—EVIDENCE.
In an action on an accident insurance policy, where the policy required notice to be given the company in case of accident, the plaintiff's testimony that notice and proofs of death were sent the company within the time, made a *prima facie* case of proof of notice. The fact that plaintiff could not remember what was contained in the proofs could not defeat her proof.

2. SAME—WAIVER OF PROOF OF INJURY.
A refusal to pay a policy of accident insurance on the ground of misrepresentation in the application waives the requirement for preliminary proofs of injury.

3. ILLEGAL MARRIAGE—PRESUMPTION.
No man is presumed to do an unlawful act. Where a man contracts marriage or enters into marriage relations, there can be no presumption that he has another living lawful wife.

4. INSURANCE POLICY—FALSE REPRESENTATIONS—BURDEN OF PROOF.
In an action on an accident insurance policy, if the defendant seeks to avoid the policy on the ground of a false representation in the application that plaintiff was the wife of the assured, the burden of proof is on the defendant to show that the representation was false.

5. ACCIDENT INSURANCE — INTENTIONAL INJURY — PRESUMPTION — BURDEN OF PROOF.
In an action on an accident insurance policy, which provides that the company shall not be liable for intentional injuries inflicted by the insured or any one else, where the evidence shows that the assured came to his death by a gunshot wound, but there is no evidence of how or by whom the wound was inflicted, the law will not presume that the injury was intentionally inflicted, but the burden is on the defendant to show that the death was from one of the excepted causes.

6. INSURANCE—WARRANTY.

In an application for accident insurance, the following statement: "Write policy payable, in case of death to Mrs. L. whose relationship to me is that of wife," is not a warranty that the beneficiary is assured's wife, or a material representation, but is to be construed only as a description of the person of the beneficiary.

7. INSURABLE INTEREST.

A woman living with a man as his wife, although they are not legally married, has an insurable interest in the man's life.

*Error to the District Court of Las Animas County.*

Mr. E. BELL, Mr. JOHN L. THOMAS and Mr. W. B. MORGAN, for plaintiff in error.

Messrs. YEAMAN & GOVE, for defendant in error.

WILSON, J., delivered the opinion of the court.

This was an action to recover on a policy of accident insurance. Plaintiff was the beneficiary named in the policy in the event of accidental injuries resulting in the death of the assured. The case comes into this court for the second time. The *Travelers' Ins. Co. v. Lampkin,* 5 Colo. App. 177. On its former appearance, the principal error assigned, and the one upon which the court based its judgment of reversal, was that the trial court had erred in sustaining plaintiff's demurrer to the fifth defense set up in the answer. This defense was as follows:

"Now comes the defendant, The Travelers' Insurance Company, and by leave of court first had and obtained, amends its fifth defense herein, and for such fifth defense alleges:

"*First.* That on the 22d day of November, 1891, said Joseph R. Lampkin made his written application to this defendant for an accident insurance policy upon the life of the said Joseph R. Lampkin, for the sum of two thousand dollars insurance in case of accidental death, and in said written application made certain written statements of fact as the basis for said policy of insurance, which said statement of facts in said application the said Joseph R. Lampkin warranted to be true.

" *Second.* That in said written application the said Joseph R. Lampkin stated as a fact which he warranted to be true that the plaintiff herein, Lou Lampkin, was the wife of the said Joseph R. Lampkin.

" *Third.* That the defendant was, at its office in the city of Hartford, in the state of Connecticut, induced to execute and deliver to said Joseph R. Lampkin the policy of insurance in the complaint set forth, and to thereby become an insurer as therein set forth, upon the faith of said statement of facts in said written application contained, and the said policy of insurance in the complaint set forth was executed and delivered to the said Joseph R. Lampkin as aforesaid, as appears upon the face of said policy of insurance, in consideration of the warranties in said application for said policy of insurance made, together with an order (for moneys therein specified), on the Atchison, Topeka & Santa Fé Railroad Company.

" *Fourth.* That said statement in said application contained that the plaintiff herein was the wife of the said Joseph R. Lampkin, was false, and known by the said Joseph R. Lampkin to be false at the time he made the same. That said Lou Lampkin, the plaintiff herein, was not at the time said application was made, or at any other time, the wife of the said Joseph R. Lampkin. Defendant further avers that at the time of making said application and said statement of facts the said Joseph R. Lampkin was lawfully married to one Carrie Lampkin, who was then residing in the state of Illinois. That the said Joseph R. Lampkin had, at the time of making said application and statement of facts, abandoned his lawful wife, Carrie Lampkin, and was then living in adultery with the plaintiff herein, Lou Lampkin:

" *Fifth.* That the facts last above stated were material to be known to this defendant, and material to the risk assumed in issuing said policy of insurance, and if said facts had been known to this defendant the policy of insurance sued on herein, and set forth in the complaint in this action, would not have been made or issued by this defendant, nor would

this defendant have made or issued any policy of insurance whatever to the said Joseph R. Lampkin."

The cause was remanded, and upon second trial in the district court, after the conclusion of the introduction of evidence on behalf of plaintiff, a judgment of nonsuit was granted and rendered upon the motion of defendant. Plaintiff now brings the case here, complaining that this judgment was erroneous, and assigning numerous errors. In arriving at a determination of the issues presented, it will be necessary for us to consider only three of the grounds upon which the motion for nonsuit was based and sustained.

1. A provision in the policy required that "immediate written notice, with full particulars, and full name and address of the assured is to be given said company at Hartford of any accident and injury for which claim is made," and it was further provided that unless affirmative proof of death or accident was so furnished within seven months from the time of the accident, all claims based thereon should be forfeited to the company. Defendant claims that this notice and proof of death was a condition precedent to plaintiff's recovery; that the burden of proof was on plaintiff to establish it, and that therein she wholly failed. The plaintiff testified as to the notice of death that "the company was notified by letter;" that "the papers were made out, death proofs made out, and sent to the company;" and that this was done during the same week and about three days after the death of the assured which was on the 9th day of December, 1891. There was also offered and received in evidence, a letter to the plaintiff from Mr. Lesem, state agent of defendant, dated at Denver, on December 14, 1891, in which he acknowledged receipt of the death proofs, and stated that they would be referred that day to the home office. Another letter from Mr. Lesem, dated February 29, 1892, in reference to a letter of inquiry from plaintiff, stated that the medical adjuster of the company had been in Denver, and taken with him to Hartford, the headquarters of the company, all of the papers in the case. There was also offered in evidence a let-

ter from the company to plaintiff, dated at Hartford, February 23, 1892, replying to a letter from plaintiff. In this letter the company stated that it had been advised by counsel for Mrs. Carrie Lampkin, that she was the lawful wife of the deceased, and that plaintiff was not, and that if this was the case, there was no insurance in force, and the policy was void. The letter added, " And there the matter rests until the claimant has submitted satisfactory proof." In face of the positive testimony of plaintiff that she had forwarded to the company the proofs of loss, we think it was clearly error in the court to have sustained a nonsuit upon the ground that there was a failure in this proof. Plaintiff could not be defeated on the ground that she had failed in this proof by reason of the fact that she said she could not remember what was contained in the proofs of loss. By her evidence that she had forwarded the proofs of loss, she made out at least a *prima facie* case, and if defendant relied upon any defect in the proofs, the burden was upon it to show such defect. Even, however, if this were not the case, the letter from defendant offered in evidence cannot be construed otherwise than as a refusal to pay the loss unless plaintiff first made proof that she had been the lawful wife of deceased. This she would not have been required to state or show in her preliminary proofs of loss, and the refusal must therefore be taken as a positive refusal to pay, and not on account of any failure in or want of preliminary proofs. In such case, the company cannot now be heard to complain of such failure or want. It waived this defense, if it ever existed, by refusal to pay upon the ground that there was a misrepresentation in the policy as to the relationship which existed between the assured and the beneficiary. *Atlantic Ins. Co. v. Manning*, 3 Colo. 224; *Hartford Fire Ins. Co. v. Smith*, 3 Colo. 422.

2. The next ground of the motion for nonsuit requiring our notice is that plaintiff had not shown that she was the wife of the insured, but on the contrary it appeared from the evidence that the assured had a lawful wife living at the time, and that plaintiff knew it. The motion does not state

at what time the evidence disclosed that the assured had a lawful wife living, nor at what time plaintiff knew it, but we will assume that it intended to charge that it was at the time when the pretended marriage between plaintiff and the assured took place, and also when application was made for the policy in question, and when it was issued. Waiving the question as to whether or not the burden was on plaintiff in the first instance to prove that she was the lawful wife of the assured,—which we by no means concede, however,—did it appear from plaintiff's evidence that the assured had a lawful wife living at the time when the alleged contract of marriage with plaintiff took place, or when he made application for the policy? We think that it did not. All of the evidence upon this point and upon which defendant relies, was given by the plaintiff herself. It was contained in the following interrogatory and answer on her cross-examination:

" Q. At the time of your marriage, you knew Joseph Lampkin had another wife?

" A. I knew he had had."

In answer to another question as to how she had knowledge of it, she said: " I heard it from other parties." Upon her redirect examination, she testified that before she married Lampkin, she heard that he had been divorced from his former wife. We do not think that this testimony was at all sufficient to sustain the contention of defendant. It was hearsay testimony of the weakest and most unsatisfactory character; and then if she is bound by the report of the assured's previous marriage on the ground that the relation having been shown to exist, it is presumed to continue, why should she not be given the benefit of the information coming to her that he had been previously divorced? It is true that when the relation of marriage is once shown, it is presumed to continue until the contrary is shown, but in this case, it was not shown. All the evidence was as to a report which she had heard, that the assured had been at one time married. This presumption could not arise by reason of another well-settled rule of law. No man is presumed to do

an unlawful act, and assured would have been guilty of such if at the time he contracted the so-called marriage relations with the plaintiff, he had had a lawful wife living.    Moreover, if defendant sought to avoid the policy on the ground of the false representation in the application that plaintiff was the wife of the assured, the burden of proof was upon it to show it.    *Knights of Honor v. Wollschlager*, 22 Colo. 214; *State Ins. Co. v. Du Bois*, 7 Colo. App. 224; *Piedmont, etc., Life Ins. Co. v. Ewing*, 92 U. S. 378.    In the latter case, the court, speaking through Mr. Justice Miller, said: " It is no hardship, if the insurer knows or believes any of these statements to be false, that he shall furnish the evidence on which that knowledge or belief rests.    He can thus single out the answer whose truth he proposes to contest, and if he has any reasonable grounds to make such an issue, he can show the facts on which it is founded."    It would be imposing a most unreasonable burden on this plaintiff, or upon any one similarly situated, to require that she should first show that prior to her contracting marriage with the assured, he had never been married, or if he had, that he had been divorced.    It might be that she had known him but a short time previous to her marriage contract, and that he had lived in a great many different places, many of which were possibly unknown to the plaintiff.    It would impose upon her the task of investigating the whole of his past life, a burden which would amount in fact to an absolute denial of the right to recovery on the policy.    Whereas, if the defendant has knowledge from any circumstances of the existence of the fact charged, it can readily produce the evidence, and substantiate it.    The same circumstances which would give it knowledge of the fact would readily indicate the means by which it could be shown. In this case it appears from the defendant's own letter that it claimed to have knowledge by virtue of a letter from the attorney of the so-called lawful wife, who was protesting against the payment of the loss to the plaintiff.    If, therefore, it was a fact, the presumption is that defendant could have readily produced the necessary evidence to show it, through informa-

tion derived from this attorney, and from the woman herself. It is of course true that the evidence on behalf of plaintiff might sufficiently show the falsity of the statement, but before this will justify a nonsuit, or dispense with the necessity of proof by defendant, the evidence must be of some positive character, not a mere matter of hearsay or inference. We think, therefore, that the court was not justified in granting the nonsuit upon this ground.

3. As another ground in support of the nonsuit, it is claimed that it was not established by plaintiff's evidence that the death of the assured was the result of accident. The obligation of the policy was to pay in the event of bodily injuries effected through external, violent and accidental means, or in case of death resulting therefrom. The fourth clause of the policy enumerated a large number of injuries and causes of death which it was expressly stated were excepted from the policy, and which it did not cover. Among others was "suicide, sane or insane," and " intentional injuries, (inflicted by insured or any other person,) " and those resulting from dueling or fighting. It was shown beyond a doubt in this case that death resulted from external and violent causes, the body when found showing a gunshot wound in the breast, just below the collar bone. The excepted causes, which would have vitiated the policy, were that the wound was inflicted intentionally, by the assured or by some one else. The rule in this case is that the burden is on the defendant in an action of this kind to prove that the death was from one of the excepted causes, at least after plaintiff has made a *prima facie* showing of accidental death. *Anthony v. M. N. A. Ass'n,* 162 Mass. 354; *Freeman v. Travelers' Ins. Co.,* 144 Mass. 572; *Coburn v. Travelers' Ins. Co.,* 145 Mass. 226. The law does not presume suicide, neither does it presume murder. *Travelers' Ins. Co. v. McConkey,* 127 U. S. 666 ; *Peck v. Equitable Accident Ass'n,* 5 N. Y. Supp. 217 ; *Mallory v. Ins. Co.,* 47 N. Y. 52. In the *Peck* case above cited, the court said: " The fact that the injury was caused by external violence was directly and positively established by the proof given of the

nature and character of his injury. We think the presumption, if any, was that his injury was caused by accidental means, rather than that it was the result of design either on the part of the decedent, or of any other person. It was not to be presumed that his injury was self-inflicted nor that it was intentionally inflicted by any other person. The evidence was sufficient to justify the trial court in finding that the injury sustained was caused by accidental means."

In *Cronkhite v. Travelers' Ins. Co.*, 75 Wis. 119, Judge Lyon said in a case very similar to that at bar: "No presumption can be indulged that the law has been violated, as it would have been were the injuries intentionally inflicted by another. On the contrary, the presumption is that they were not. Hence, had the plaintiff proved only that the insured at a certain time had upon his person bruises and wounds evidencing that he had been recently injured by external violence, and further that such injuries caused his death, she would have made out a *prima facie* case of death resulting from bodily injuries through external, violent and accidental means." The principle of this case is reaffirmed by a very recent decision in the same state. *Butero v. Travelers' Accident Ins. Co.*, 71 N. W. Rep. 811.

We are, therefore, of opinion that the evidence presented made a *prima facie* showing of death from external and violent causes and accidental means, and the court was not warranted in granting a nonsuit by reason of failure of proof on this point, and this would be true even if the burden had been upon plaintiff to prove that the death was accidental. Entertaining these views, it follows that we must reverse the judgment of the trial court.

Although we might be content to conclude this opinion here, there is another question presented by the record which demands consideration at our hands. It has been elaborately argued by counsel, and at the new trial which must be had will be important, possibly decisive of the case. A proper regard, therefore, for the interests of litigants requires that we should determine it now. Conceding that it may be shown

that plaintiff at the time of the application for the issuance of the policy of insurance was not the lawful wife of deceased, does this vitiate the policy? It is vigorously contended by defendant that deceased stated in his application for insurance that plaintiff, whom he named as the beneficiary in case of death, was his wife, and that such statement was made a warranty, or if not, was a material representation, the falsity of which would prevent a recovery. At the former hearing of this cause in this court, it was held that by reason of the recitals in the policy, the warranties in the application were imported into the policy and became a part of it. The court, however, did not pass upon the application, nor undertake to say what parts of it were warranties, or what parts, if any, were material representations. The application as copied into the record before us, was in words and form following:

"To the Travelers' Insurance Company of
Hartford, Conn.

"I hereby apply for an accident policy based upon the order given herewith and upon the following statement of facts, which I warrant to be true.

"1. My full name is Joseph R. Lampkin. Age 38.

"2. My residence is La Junta, county of Otero, state of Colorado.

"3. My occupations are fully described as follows: Night watchman. Am employed by Atchison, Topeka & Santa Fé R. R. Co.

"4. My monthly wages are $60.

"5. I agree to have my occupation classed as medium.

"6. Write policy payable, in case of death under the provisions of the policy, to Mrs. Lou Lampkin, whose relationship to me is that of wife.

"7. Insurance in case of accidental death to be $2,000.

"8. Weekly indemnities for disabling injuries, $10.

"9. Total of four premiums, $20.

"10. a. I have no other insurance in this company, and no other accident insurance in any other company or association,

and have made no application for accident insurance upon which I have not been notified of the action thereon, except as herein stated.

" *b*. No application ever made by me for accident insurance has been declined, and no accident policy ever issued to me has been canceled by this or any other company or association, except as herein stated.

" *c*. I have never had, nor am I subject to fits, disorders of the brain, or any bodily or mental infirmity, except as herein stated.

" *d*. I have not in contemplation any special journey, nor any hazardous undertaking, except as herein stated.

" 11. I wish the policy written for four consecutive periods of two, two, three and five months, respectively, from the date below, each period covered by a distinct premium.

" 12. My habits are correct and temperate, and I agree that the policy shall not cover any injury happening through or while under the influence of intoxicating drinks.

" 13. I understand the classification of risks and agree that for any injury received in any occupation or exposure classed by this company as more hazardous than those above stated, I shall be entitled only to recover only such amount as the premiums paid by me would purchase at the rates fixed for such increased hazard.

" I hereby agree that the policy shall be the sum of four separate insurance contracts, and shall remain after the first insurance period only as continued by payments of premium for the consecutive periods following; and that I will make no claim for injuries effected during any period for which its respective premium has not been actually paid.

" Dated at La Junta, Colorado, this 22d day of November, 1891.

" Witness to mark.

" (Signed)    JOSEPH R. LAMPKIN."

In the interpretation of a policy of insurance, it is a well-established and undisputed rule that in cases of doubt, that

construction will be adopted which is most favorable to the assured. *State Ins. Co. v. Horner,* 14 Colo. 395; *German Ins. Co. v. Hayden,* 21 Colo. 127; *Travellers Ins. Co. v. Mc-Conkey,* 127 U. S. 666. Implied or constructive warranties are not favored by the courts, and Mr. May in his valuable work on insurance gives as the definition of an express warranty, which has met with general acceptance by the courts, that it is "a stipulation inserted in writing in the face of the policy, on the literal truth or fulfillment of which the validity of the entire contract depends." May on Insurance, § 156. If there be a warranty, then, the only concern of the courts with it is to determine the truth or falsity of the statement; its materiality is not in question. The contracting parties have declared it by their act to be material, and the courts recognize their right so to do. The question frequently arises, however, as to whether a statement in an application is a warranty, and the courts must determine it from a consideration of the language, the context, and such other matters as may throw light upon the intention of the parties. The ultimate object is to ascertain what the intention of the parties was, and this fixes the character of the statement. Even materiality, then, may sometimes be necessary to be considered as an aid to the determination of the question as to whether or not it was a warranty. May on Insurance, § 170. Parties will not be held to have entered into a contract of warranty unless they clearly intended it, and whether or not this is the case will depend upon the form of the expression used, the apparent purpose of the insertion, and sometimes upon the connection or relation to other parts of the instrument. May on Insurance, § 164. These are in substance the rules laid down for determining whether or not a statement is a warranty, rules which have been formulated by the best writers, and sustained by the great weight of authority. Applying these rules, it seems clear to us that the so-called statement in the application by deceased in this case that plaintiff was his wife, was not intended nor considered by either party as a warranty. The form in which the

statement appears is clearly sufficient in our opinion to indicate this. The various statements of fact which it seems to us were deemed by the parties as essential to the risk, were separately numbered. This so-called statement was the concluding portion of a sentence, which cannot be construed in its entirety so as to be the intended assertion of any fact, whether material or immaterial. It was simply a direction on the part of the assured as to how the policy should be made payable in case of his death. We think that the latter words were intended to be and were considered as only a further identification of the beneficiary, in other words, as simply *descriptio personæ*. The defendant prepared these printed blank forms of application, and it is a matter of common knowledge that they are prepared by insurance companies after long experience, with great care, and under the best legal advice. If it had intended, therefore, or desired an applicant for accident insurance to make a statement as to whether or not he was married or single, and had wished to make that statement either a warranty or a representation material to the risk, it would have done so in language and in a manner unequivocal, and not susceptible of dispute. It would in pursuance of its usual course have inserted as a separate numbered clause such words as would draw from the applicant a direct statement upon this point. We conclude that this so-called statement was not a warranty.

A representation such as will avoid the contract if untrue, is defined to be, " A statement incidental to the contract, relative to some fact having reference thereto, and upon the faith of which the contract is entered into. If this is material to the risk, the contract is void." May on Insurance, § 181. Here it will be seen, materiality cuts an important figure. If material to the risk, the falsity of the representation vitiates the policy. If immaterial, it has no effect. In determining this question, however, the first consideration and main obligation resting upon the court is to determine the intent of the parties. The parties have a right to make such a contract as they please, and if they agree that the truth of

a certain statement shall be material to the validity of the contract, the court will not interfere. On the same principle, if it can be reasonably determined from the application itself, or from the policy, that it was the intention of the parties that the language in controversy should not be treated as a representation at all, or if so, of a fact material, then under the rules of construction laid down by the best authorities the court would not be justified in holding it to have been a representation the falsity of which would defeat a recovery. If in a disputed case of this character the intention of the parties was to be ignored, and the materiality of a statement left wholly to the judgment of the courts, there would be no uniformity whatever of decision, and there would be an unwarranted invasion of the individual rights of contract. Tested by these rules, we think that it was clearly the understanding of the parties in this case that the language in question was not considered as the representation of a fact, material or immaterial to the risk. In the view which we take, it was not a statement of fact at all, but was simply intended and considered as language descriptive of the person to whom the loss was to be paid in the event of death. These views are sustained by the supreme court of Indiana, in a case on all fours with the one at bar. In that case the language in question was identical with that in the application in this case. It was, "Write policy payable in case of death by accident under its provisions, to Mrs. Fred Martin, whose relation to me is that of wife." It was claimed as a defense that by this the applicant represented that he was a married man, and that such representation was material, while in truth he was not married. The court said: "We think this statement is neither a warranty nor a material representation. It was merely an indication of the person to whom the policy was to be payable in case of death. * * * In any case, it could add nothing to the gravity of the risk, neither could it lessen it. The representation was not material." *Standard L. & A. Ins. Co. v. Martin*, 133 Ind. 381.

We might have some doubt as to the correctness of these

views if the plaintiff had no insurable interest in the life of the deceased, admitting that the relationship between them was as claimed by defendant. This, however, is not the case. the broad rule is that when from personal relations between parties, one has a reasonable right to expect some pecuniary advantage from a continuance of the life of the other, or to fear loss from his death, an insurable interest exists. May on Insurance, § 102 *a*. It is also expressly laid down that a woman illegally married, because the husband had a lawful wife, or living unlawfully with a man as his wife, as is claimed by the defendant to be the case here, has an insurable interest in the man's life. Bliss on Insurance, § 26; May on Insurance, § 107 *b*. A lengthy and well-considered case in Georgia very aptly expresses the reason of this rule. It says: " In this case, though the marriage was illegal, yet in fact the woman had an interest in the life of the husband. He treated her as his wife; he supported her as such; she passed in society as such; and she was dependent upon him for support as such. It was the husband who in fact effected this policy. It was his own method of extending to this woman his assistance and protection after he should himself be dead." *The Equitable Life Assurance Soc'y v. Paterson,* 41 Ga. 365. In the case at bar there was an additional and a stronger reason. The deceased was the father of a child by plaintiff. It, as well as the mother, was dependent upon him for support, and in case of his death, it would be dependent wholly upon the mother. It is not unreasonable, therefore, that he should wisely make some provision for their support in the case of his death, and as he himself applied for and effected the policy, we see no reason why it should fail, even though he made a false representation in his application, the defendant not having intimated to him in any manner whatever that this representation was material to the risk, or was intended to be so considered.

These views are not in conflict with those expressed by Judge Thomson in the opinion handed down upon the former hearing of this cause in this court. There only the aver-

ments of the fifth defense of the answer were considered. These were, in effect, that the deceased in his application stated that the plaintiff was his wife, and warranted the statement to be true; that the statement was material to be known to the defendant, and material to the risk assumed, and that if the falsity of the statement had been known to defendant, it would not have issued a policy therein. The court held that if these allegations were true, they constituted a good defense. It did not have before it the application, nor did it undertake to decide whether or not the so-called statement was made at all, or whether, if made, it was in such a manner as to make it a warranty or a material representation.

For these reasons, the judgment will be reversed and the cause remanded for a new trial in accordance with the views herein expressed.

*Reversed.*